

May 20, 2020

Steve Barnett
Secretary of State
500 East Capitol Avenue
Pierre, SD 57501
*Email: elections@state.sd.us*
*steve.barnett@state.sd.us*

Re: Notice of Noncompliance with Sections 5 and 7 of the National Voter Registration Act

Dear Secretary Barnett:

We write on behalf of the Rosebud Sioux Tribe and their members, the Oglala Sioux Tribe and their members, Four Directions, and others similarly situated, to notify you that the state of South Dakota is not in compliance with Section 5 and Section 7 of the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501, *et seq.*

Section 5 of the NVRA requires states, including South Dakota, to provide the opportunity to register to vote when people apply for driver's licenses, renew their licenses, or update their addresses. Section 7 of the NVRA requires states, including South Dakota, to provide the opportunity to register to vote when people submit public assistance applications, recertifications, renewals, or changes of address. We urge you, as the State's chief election official, S.D. CODIFIED LAWS § 12-4-33, to take immediate steps in conjunction with the South Dakota Department of Social Services (DSS), the South Dakota Department of Labor and Regulation (DLR), and the South Dakota Department of Public Safety (DPS), to bring the State into compliance with the NVRA.

Undersigned counsel have over a decade of experience in working with states to ensure compliance with the NVRA. We hope to work amicably with you to remedy South Dakota's non-compliance, as we have done with many other states. However, if the violations described in this letter are not resolved promptly, this letter serves as notice that we will pursue litigation. Under Section 11 of the NVRA, 52 U.S.C. § 20510(b)(2), litigation may be commenced within 20 days after this notice is provided.

## I. The Requirements of Section 7 of the National Voter Registration Act of 1993

Section 7 of the NVRA requires that "public assistance agencies"[1] provide individuals engaging in "covered transactions"[2] with an opportunity to register to vote. The NVRA requires public assistance agencies to ask applicants, in writing, the "Voter Preference Question" — "If you are not registered to vote where you live now, would you like to apply to register to vote here today?" — during covered transactions. *See* 52 U.S.C. § 20506(a)(6)(B)(i).

The NVRA requires public assistance agencies to distribute voter registration applications to all individuals engaging in covered transactions unless they affirmatively opt out of voter registration by declining "in writing" to register to vote. *See* 52 U.S.C. § 20506(a)(6)(A)(ii). This includes persons who answer "yes" to the Voter Preference Question or who leave the question blank.

The NVRA also requires public assistance agencies to accept "completed voter registration forms for transmittal to the appropriate State election official." 52 U.S.C.A. § 20506(a)(4)(A)(iii). Public assistance agency staff must mail completed voter registration applications to county auditors within the time period required by the NVRA, which is ten days after the date the agency accepts the completed voter registration form, or five days if the agency receives the completed voter registration form within five days of the last day to register to vote in an election. 52 U.S.C.A. § 20506(d).

Section 7(a)(6)(C) of the NVRA requires public benefits agencies to provide not only general assistance with registering to vote, but "the same degree of assistance with regard to the completion of the registration application form as is provided by the office with regard to the completion of its own forms, unless the applicant refuses such assistance." 52 U.S.C.S. § 20506(a)(6)(C). "A main thrust of the legislation was for states to play a more active role in promoting the enfranchisement of eligible voters." *Nat'l Coal. for Students with Disabilities Educ. & Legal Defense Fund v. Scales*, 150 F. Supp. 2d 845, 854-56 (D. Md. 2001).

By requiring agencies to provide their clients with the same level of assistance with voter registration as they provide with completion of agency forms, Section 7 presupposes that agency representatives know, or can access, voter eligibility requirements, including when an individual has a prior felony conviction. In South Dakota, people who have been convicted of a felony have their right to vote automatically restored upon completion of their sentence. S.D. CODIFIED LAWS § 12-4-18; South Dakota Secretary of State website, Felony Convictions, *available at* https://sdsos.gov/elections-voting/voting/register-to-vote/felony-convictions.aspx (last visited on March 27, 2020).

---

[1] "All offices in the state that provide public assistance" are "public assistance agencies" within the meaning of the NVRA. 52 U.S.C. § 20506(a)(2)(A).

[2] A "covered transaction" is an application, renewal, recertification, or change of address transaction for a public assistance program. 52 U.S.C. § 20506(a)(6)(A).

2

### A. South Dakota's Non-Compliance with Section 7 of the NVRA

South Dakota's Department of Social Services (DSS) and Department of Labor and Regulation (DLR) are public assistance agencies within the meaning of the NVRA. *See* 52 U.S.C. § 20506(a)(2)(A). Applications, renewals, recertifications, or change of address transactions for public assistance programs administered by DSS and DLR, including Temporary Assistance for Needy Families (TANF), Supplemental Nutrition Assistance Program (SNAP), Medicaid, and Children's Health Insurance Program (CHIP), are examples of covered transactions within the meaning of the NVRA. *See* S.D. CODIFIED LAWS § 12-4-2; s*ee also, e.g.,* U.S. Department of Justice, The National Voter Registration Act of 1993 (NVRA): Questions and Answers, Q13, http://www.justice.gov/crt/about/vot/nvra/nvra_faq.php (last visited May 14, 2020). The DLR website states that "The Department of Labor and Regulation administers [TANF] together with the Department of Social Services."[3] According to DLR, it "typically" receives applications for TANF assistance "in-person", but "accommodations for fax, telephone, and mail applications may be made by the employment service specialist."[4] Given that DSS and DLR accept applications for benefits in all these ways, they also must provide an opportunity to apply for voter registration in these transactions.

> a. **Public Records Requests and Field Investigation at Public Benefits Offices Establish NVRA Violations in South Dakota.**

NARF and Demos have investigated South Dakota's compliance with Section 7 of the NVRA by examining data submitted by South Dakota to the federal Election Assistance Commission; examining public assistance agencies' forms, policies, and practices; requesting and reviewing public records relating to South Dakota's Section 7 policies and practices; and conducting a field investigation by visiting DSS offices and speaking with public assistance clients in and around tribal reservations.

The EAC's data for South Dakota shows serious cause for concern. While South Dakota reported over 7,000 public assistance voter registration applications to the Election Assistance Commission in 2004, in the years since then the number reported has dropped dramatically, to as low as zero in 2014 and, most recently just 2,921 in 2018. The 1,100 registrations in 2016, a high voter-interest presidential election year, represent an 84% reduction from those reported in 2004. These data, viewed together with the information gathered at offices from persons applying for services, and from public records, indicate that South Dakota's public assistance offices are failing to consistently provide the voter registration services mandated by the NVRA.

> 1. DSS offices fail to offer voter registration services to applicants who leave the Voter Preference Question blank.

---

[3] DLR TANF webpage, *available at* https://dlr.sd.gov/localoffices/job_search_tools/tanf.aspx

[4] December 28, 2018 letter from Graham Oey, Senior Staff Attorney, South Dakota Department of Labor and Regulation Office of the Secretary to Demos ("DLR Letter").

3

Our public records request to DSS and field work both indicate that DSS fails to systematically provide voter registration applications to individuals who leave the Voter Preference Question blank at DSS locations servicing tribal communities. For example, the Economic Assistance Application is used to apply for TANF, SNAP, and Medicaid benefits in DSS offices.[5] In response to our request for public records explaining how agencies provide voter registration services during covered transactions, DSS responded that it provides voter registration applications to individuals who select "yes" to the Voter Preference Question on the Economic Assistance Application.[6] DSS's response did not address whether it also provides voter registration applications to individuals who leave the Voter Preference question blank.[7]

The Pierre and Rapid City DSS offices told our field investigators that they do not provide voter registration applications to clients who leave the Voter Preference Question blank on the Economic Assistance Application. The DSS office in Eagle Butte skipped over the Voter Preference Question while reviewing the Economic Assistance Application with a field investigator, which indicates an office practice that would regularly result in blank responses to the Voter Preference Question. Additionally, the field investigators encountered at least two examples of public benefits applicants who recalled leaving the Voter Preference Question blank and not receiving a voter registration application.

DSS's failure to offer voter registration applications to public benefits applicants who leave the Voter Preference Question blank violates the requirements of Section 7 of the NVRA. Section 7 requires covered agencies to provide voter registration applications to persons applying for benefits, renewing benefits, or registering a change of address with the agency, unless the individual affirmatively declines voter registration. *See Valdez v. Squier*, 676 F.3d 935, 945-46 (10th Cir. 2012) (The NVRA "must be interpreted as requiring a designated voter registration agency to provide an applicant with a voter registration form unless the applicant declines, in written form, to register to vote. . . . Thus, in sum, [the NVRA] requires an applicant to affirmatively, by way of writing, 'opt out' of receiving a voter registration form."); *Action NC v. Strach*, 216 F. Supp. 3d 597, 640 (M.D.N.C. 2016) (following *Valdez* court's interpretation of opt-out requirement based on plain language statutory construction).

> 2. Some benefits applications and forms for SNAP, TANF, and Medicaid recertifications and change of address requests do not contain the Voter Preference Question required by the NVRA.

---

[5] South Dakota Economic Assistance Application, *available at* https://dss.sd.gov/formsandpubs/docs/GEN/301Application.pdf

[6] December 7, 2018 letter from Laura Ringling, DSS Office of the Secretary Division of Legal Services to Demos ("DSS Letter"). Q16: "Documents sufficient to explain how Agencies provide voter registration services covered by the NVRA during transactions conducted in person, by fax, by telephone, online, and by mail, respectively." A16: "Page 10 of [the Economic Assistance Application] includes a section titled: Would you like to Register to Vote? If the applicant indicates 'yes' in this section, the applicant is provided with the South Dakota Voter Registration Form which is attached. This form is provided in person, by fax, or by mail, depending on the applicant's preference."

[7] *See id.*

4

DSS processes recertifications and change of address requests for SNAP, TANF, and Medicaid, using forms that do not include the Voter Preference Question as required under the NVRA. *See* 52 U.S.C. § 20506(a)(6)(B)(i).

The investigators noted that DSS lacks uniform procedures to process recertifications and change of address requests. Two offices (Rapid City and Mission) used form DSS-EA-214 to recertify benefits, while the others used the Economic Assistance Application. Form DSS-EA-214 does not ask the Voter Preference Question, but the Economic Assistance Application does.

The investigators noted similar inconsistencies in the way that DSS offices process change of address requests. The investigators found that only four offices used forms to report a change of address, and none of those forms asked the Voter Preference Question. The offices in Rapid City and in Mission used the same non-compliant form they used for recertifications, the DSS-EA-214. The office in Pine Ridge used a form titled "Note to Benefits Specialist", and the office in Hot Springs had its own change of address form. The application forms for Low Income Energy Assistance (LIEAP), Childcare Service Assistance, and Medicaid/CHIP programs do not contain the Voter Preference Question. An applicant for LIEAP in Winner did not receive a voter registration application and did not recall any oral or written voter preference question. A Medicaid applicant in Rapid City did not receive voter registration services while completing an application.

As discussed above, the practice of failing to ask the Voter Preference Question, in writing, violates the requirements of Section 7.

> 3. DSS offices fail to provide voter registration applications to some persons who answer "yes" to the Voter Preference Question.

We found evidence that DSS fails to consistently offer voter registration assistance to public benefits clients who answer "yes" to the voter preference question at locations serving tribal communities. The field investigators encountered at least three people who answered "yes" to the Voter Preference Question, but did not receive a voter registration application during the covered transaction.

Two survey respondents answered "yes" to the Voter Preference Question during covered transactions but never received any voter registration form. One survey respondent experienced this type of violation during a transaction to apply for SNAP and TANF in Rapid City. A second survey respondent experienced this type of violation during a transaction to renew their SNAP and Medicaid/CHIP benefits in Pine Ridge. The practice of failing to provide voter registration applications to public benefits clients who answer "yes" to the Voter Preference Question violates the provisions of Section 7. *See* 52 U.S.C. §§ 20506(a)(4)(A)(i), 20506(A)(6).

A DSS office worker in Pierre recalled personally answering "yes" to the Voter Preference Question while applying for SNAP benefits, and later received a voter registration application in the mail instead of during the transaction itself. The practice of failing to provide voter registration applications to individuals who answer "yes" to the Voter Preference Question

*during* covered transactions does not comply with the provisions of Section 7. *See* 52 U.S.C. §§ 20506(a)(4)(A)(i), 20506(A)(6) (stating that "voter registration agenc[ies] … shall—(A) distribute *with* each application for such service or assistance, and with each recertification, renewal, or change of address form relating to such service or assistance—[a voter registration form]") (emphasis added).

4. Failure to provide equal assistance to clients with criminal records

We found evidence that DSS fails to consistently provide clients with needed information about their eligibility to register to vote. Applicants with conviction histories are eligible to vote in South Dakota upon completion of their sentence, including probation, parole, and restitution. S.D. CODIFIED LAWS § 12-4-18; South Dakota Secretary of State website, Felony Convictions, *available at* https://sdsos.gov/elections-voting/voting/register-to-vote/felony-convictions.aspx (last visited on March 27, 2020). The field investigators, however, encountered a survey respondent who had completed her sentence and was eligible to vote when she applied for SNAP, TANF, and Medicaid at the Martin DSS office. The respondent recounted that her case worker skipped the Voter Preference Question when reviewing the benefits application form because she had once been convicted of a felony, even though she was now eligible to vote under South Dakota law. Failure to provide accurate assistance regarding voter eligibility violates the equal assistance requirements of Section 7 of the NVRA, 52 U.S.C.S. § 20506(a)(6)(C).

5. DSS offices do not uniformly accept and submit completed voter registration forms to county auditors within required timeframes.

The field investigation found evidence that, in practice, DSS offices serving tribal communities do not consistently accept completed voter registration forms to submit to county auditors. For example, a survey respondent told our field investigators that they received a voter registration application during a covered transaction but was then instructed to mail it in themselves.[8] The practice of failing to accept "completed voter registration forms for transmittal to the appropriate State election official" violates the provisions of Section 7. 52 U.S.C.A. § 20506(a)(4)(A)(iii).

In addition, although DSS procedures instruct personnel to mail applicants' completed voter registration forms to county auditors, DSS does not appear to require *timely* submissions to county auditors; nor does it have a process to collect completed voter registration forms that it mails or faxes to public benefits clients. The NVRA requires public assistance staff to mail completed voter registration applications to county auditors within ten days after the date the agency accepts the completed voter registration form, or five days if the agency accepts the completed voter registration form within five days of the last day to register to vote in an election. 52 USCA § 20506(d). According to records provided by DSS, the agency only requires employees to send voter registration applications to the county auditors "before election time", without mentioning the submission deadlines required by the NVRA.[9]

---

[8] This person experienced this violation during a change of address transaction in Pine Ridge.

[9] DSS Letter attaching "the information from [DSS] policy manuals that cover voter registration activities."

6

DSS's vague instruction to employees to send voter registration applications to the county auditors "before election time" is wholly insufficient to comply with the NVRA's specific requirements on timely submission. Even though South Dakota law requires that voter registration applications "completed at any local, state, or federal agency during any given week commencing on Tuesday through the following Monday shall be sent to the appropriate county auditors no later than the following Wednesday," S.D. CODIFIED LAWS § 12-4-5, the public records of DSS policies suggest that this requirement is not uniformly followed.

### 6. DSS and DLR offices fail to offer an opportunity to register to vote to all public benefits applicants.

DSS and DLR offices do not consistently offer an opportunity to register to vote to all public benefits applicants at locations serving tribal communities and other members of the public. The DSS office in Rapid City told our field investigators that it does not offer voter registration forms when processing renewals or recertifications for public benefits. DLR does not provide voter registration applications to TANF clients, nor does it accept and transmit voter registration applications from such clients. When DLR receives an Economic Assistance Application form from a TANF client indicating that the applicant would like to register to vote, it does not provide that applicant with a voter registration form. According to DLR, it "does not receive voter registration applications" and specifically "does not receive voter registration forms from TANF applicants."[10] DLR staff do not provide voter registration services regardless of the way an applicant fills out the voter preference question on the Economic Assistance Application. All of these failures directly violate Section 7 of the NVRA, which requires the provision of a voter registration form unless the public benefits client declines in writing to register to vote.

DLR's and DSS's processes for providing voter registration services to TANF applicants also violate Section 7 to the extent that these agencies fail to distribute voter registration forms *with* each TANF application and fail to provide the same degree of assistance with voter registration as with the TANF application process. 52 USCA §§ 20506(a)(6)(A), 20506(a)(6)(C) (emphasis added). Even if DSS mails voter registration forms to all TANF applicants who mark that they want to register to vote, regardless of whether it received the Economic Assistance Application from DLR or directly from the TANF applicant, that practice would still violate Section 7. As noted above in Section I.A.a.3, the NVRA requires agencies to "distribute [voter registration forms] with each [TANF] application." 52 USCA § 20506(a)(6)(A). The term "with" means that the South Dakota Voter Registration Form should be provided in the same transaction as a TANF applicant's in-person meeting with a DLR local office. DSS' subsequent mailing of the voter registration form to the TANF applicant would be a later transaction that does not satisfy Section 7 of the NVRA. Further, this scenario also violates Section 7's requirement that agencies provide the same degree of assistance with voter registration as they do for the TANF application process. 52 USCA § 20506(a)(6)(C). If a person receives in-person assistance at a DLR office in completing their TANF application, then receiving a voter registration form in the mail, without the opportunity for assistance with completing it, is an inferior level of assistance.

---

[10] DLR Letter.

7

The DSS Hot Springs office reported to an investigator that it does not offer any voter registration assistance in-house, and instead directs clients who answer "yes" to the Voter Preference Question to visit the county auditor's office to apply for voter registration there. The practice of public benefits agencies directing clients who answer "yes" to the voter preference question to the county auditor's office to apply for voter registration defeats a core purpose of Section 7, which is to allow people to take care of voter registration while applying for benefits, rather than having to visit a separate office.

### 7. DSS offices do not consistently process and submit completed voter registration applications.

The field investigation found evidence that DSS offices serving tribal communities fail to process and submit all completed voter registration forms to county auditors. On November 11, 2019, the field investigators encountered a person who had walked about 30 miles from Porcupine, SD to the Pine Ridge DSS field office in 12 degree Fahrenheit weather to submit a change of address request for his SNAP benefits. In violation of Section 7 of the NVRA, this individual was not offered a voter registration application during his change-of-address transaction. Following this transaction, the field investigators provided the survey respondent with a voter registration application, assisted his completion of the application, and delivered his completed application to the Pine Ridge DSS field office. A staff person at the DSS office threw the completed voter registration form in the trash and told the field investigator that she refused to accept the voter registration application because she was following orders from a DSS memorandum instructing DSS workers to refuse voter registration applications lacking a "9-1-1 address." The field investigator asked the Pine Ridge DSS worker to remove the voter registration form from the trash, showed the worker that the address in that application was sufficient for voter registration purposes, and asked the worker to mail in the completed application to the county auditor. As of December 6, 2019, this person was still not registered to vote, and the Pine Ridge field office did not respond to inquiries asking whether it had mailed in the voter registration application. To the best of our knowledge, this person still is not on the voter registration rolls.

Federal law requires public benefits agencies to accept completed voter registration applications and mail them to county auditors, regardless of whether the client who completed the form listed a non-9-1-1 address, or no address at all. The instructions on the Election Assistance Commission's National Voter Registration Form specifically provide a system to document the home address of applicants who live in rural areas: "Note: If you live in a rural area but do not have a street address, or if you have no address, please show where you live using the map in Box C (at the bottom of the form)." See EAC National Voter Registration Form, available at https://www.eac.gov/sites/default/files/eac_assets/1/6/Federal_Voter_Registration_ENG.pdf.

### II. South Dakota's Noncompliance with the Requirements of Section 5 of the National Voter Registration Act of 1993

Section 5 of the NVRA, 52 U.S.C. § 20504, requires that "a state motor vehicle driver's license application, including any renewal application, submitted to the appropriate State motor vehicle

8

authority under State law shall serve as an application for voter registration with respect to elections for Federal office unless the applicant fails to sign the voter registration application." 52 U.S.C. § 20504. Section 5(d) of the NVRA requires that all motor vehicle department change of address transactions must automatically update the client's voter registration information unless the client affirmatively declines. 52 U.S.C. § 20504(d). The requirements for voter registration services apply whether the transaction is conducted in person or remotely, such as online, by mail, or by telephone. As the U.S. Department of Justice's website explains, to the extent a State "provides for remote applications for driver's licenses, driver's license renewals, or driver's license changes of address, via mail, telephone, or internet or other means, then provision must be made to include the required voter registration opportunity as well."[11] Section 5 of the NVRA also prevents a DMV's voter registration process from "requir[ing] any information that duplicates information required in the driver's license portion of the form" other than a second signature and attestation of voter eligibility. 52 U.S.C. § 20504(c)(2)(A).

### A. Failure to provide sufficient voter registration services to persons who update their addresses with DPS

DPS fails to provide sufficient voter registration services to South Dakotans who request an address change by mail or in person at driver's license offices using the South Dakota Driver License/I.D. Card Application. While use of this application form would allow a driver to update their address for their driver's license, this process does not comply with subpart (d) of Section 5 of the NVRA, which requires that this change of address also serve as notification of an address change for voter registration purposes "unless the registrant states on the form that the change of address is not for voter registration purposes." 52 US.C. § 20504(d). In other words, under Section 5(d), a change of address for a person's driver's license must automatically result in updating the voter's address for voter registration purposes, unless the voter affirmatively opts out of having their address updated for voter registration purposes. By contrast, South Dakota's form fails to indicate that a change of address for driver's license purposes will automatically update the address for voter registration purposes unless the person opts out.[12] Thus, South

---

[11] U.S. Department of Justice, The National Voter Registration Act of 1993 (NVRA), Questions and Answers, #4, available at https://www.justice.gov/crt/national-voter-registration-act-1993-nvra (last visited May 14, 2020).

[12] *See* Appendix 1 to this letter (DPS application form). The relevant language provides as follows:

   YES__ NO__ Do you wish to register to vote? If yes, answer #1. Answer #2 and/or #3 if they apply to you.

   YES__ NO__ If you are currently registered to vote, do you want to update your registration? If yes, answer #1. Answer #2 and/or #3 if they apply to you.

   1. Choice of party _____
      If you want to change your political party or remain registered with your current political party, you must complete #1. If you leave the choice of party blank, you will be entered as an independent party affiliation voter, which is not a political party in South Dakota.
   2. If your residential address (listed above) is a post office box, or general delivery, you must give the location of your residence: _____
   3. I was last registered with the following name and/or address which will be cancelled:
      Last _____ First _____ Middle ____ Previous Address _____

9

Dakota applicants must affirmatively request that their DPS address update be forwarded to the county auditor for voter registration purposes, or must contact the county auditor themselves to update their voter registration address, neither of which complies with the NVRA.

### B. Failure to provide voter registration to customers without an SSN or driver's license.

DPS fails to provide voter registration services to applicants who lack either a social security number or a driver's license. Slide 6 of the DPS Power Point Presentation for training of DPS employees on voter registration states that if applicants "do not have a SD Driver's License or a SSN, they can only register to vote in the county auditor's office."[13] Section 5 of the NVRA does not include those exceptions. It instead requires DPS to accept voter registration applications from persons who affirm their eligibility on the application form itself.

### C. Failure to provide any voter registration services

Our investigation discovered that the DPS office, in Dupree – a town that is 66% Native American and adjacent to the Cheyenne River Reservation, reported that it does not provide any voter registration services. If a customer requests voter registration, the office instructs the customer to visit the County Auditor's office. This directly violates Section 5(a)(1) of the NVRA, which requires that an application for a driver's license, including a renewal, will serve as an application for voter registration unless the applicant opts out of voter registration. It also violates Section 5(e) of the NVRA, which requires DPS to transmit completed voter applications to the appropriate state election official. We are concerned that other DPS offices may be similarly directing customers to the County Auditor's office.

## II. Conclusion

The COVID-19 pandemic has made voter registration even more difficult and thus exacerbated the problems identified in this letter. The limited mobility and need for these services is even greater now as well. Many South Dakotans, especially Native Americans, do not have traditional street addresses, home mail delivery, or broadband that would enable access to voting and voter registration even in the best of times. But during this time, these state interactions (even if done remotely) would be the only place many Native voters are likely to encounter a voter registration application.

This letter serves as a notice letter pursuant to Section 11 of the NVRA, 52 U.S.C. § 20510(b), that DSS, DLR, and DPS are not in compliance with their obligations under Sections 5 and 7 of the NVRA. We are providing this notice to you as South Dakota's chief election official, who is responsible for South Dakota's compliance with the NVRA. The undersigned parties are prepared to engage with you and other responsible officials to develop a comprehensive plan for compliance with the NVRA without litigation. However, Section 11 of the NVRA provides that

---

[13] See Appendix 2 to this letter (DPS PowerPoint Presentation, at 6)

if the violations identified herein are not corrected within 20 days, the aggrieved parties may pursue litigation. Accordingly, we ask you, as South Dakota's Chief Election Official, to act now to ensure that South Dakota's public assistance and DPS offices perform their federally-mandated responsibility to provide voter registration services. Because primary elections are to be conducted in South Dakota in June, we ask that you advise us promptly of your response.

Sincerely,

Natalie Landreth
Native American Rights Fund
745 W. 4th Avenue, Suite 502
Anchorage, AK 99501-1736
(907) 276-0680
Email: landreth@narf.org

Kim J. Gottschalk
Jacqueline De León
Native American Rights Fund
1506 Broadway
Boulder, CO 80302-6296
(303) 447-8760
Email: jeronimo@narf.org
        jdeleon@narf.org

*Counsel for the Rosebud Sioux Tribe and the Oglala Sioux Tribe*

Brenda Wright
Brenda Wright
Miranda Galindo
Dēmos
80 Broad Street, 4th Floor
New York, NY 10004
(646) 948-1621
(212) 633-1405
Email: bwright@demos.org
        mgalindo@demos.org

*Counsel for Four Directions*

cc: Laurie Gill
    Cabinet Secretary
    South Dakota Department of Social Services
    700 Governors Drive
    Pierre, SD 57501

11

(605) 773-3165
Email: laurie.gill@state.sd.us

Marcia Hultman
Cabinet Secretary
Department of Labor and Regulation
123 W. Missouri Ave.
Pierre, SD 57501-0405
(605) 773-5395
Email: marcia.hultman@state.sd.us

Craig Price
Cabinet Secretary
Department of Public Safety
118 W Capitol Ave
Pierre, SD 57501
Email: craig.price@state.sd.us