UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ROSEBUD SIOUX TRIBE and their members, OGLALA SIOUX TRIBE and their members, and LAKOTA PEOPLE'S LAW PROJECT, Kimberly Dillon and Hoksila White Mountain, <br><br> Plaintiffs <br><br><br> vs. <br><br> STEVE BARNETT, in his official capacity as Secretary of State for the State of South Dakota and Chairperson of the South Dakota State Board of Elections; LAURIE GILL, in her official capacity as Cabinet Secretary for the South Dakota Department of Social Services; MARCIA HULTMAN, in her official capacity as Cabinet Secretary for the South Dakota Department of Labor and Regulation; and CRAIG PRICE, in his official capacity as Cabinet Secretary for the South Dakota Department of Public Safety, <br><br> Defendants | 5:20-cv-5058 <br><br><br> MEMORANDUM <br> AND ORDER |

Plaintiffs have filed suit alleging numerous violations of the National Voter Registration Act (NVRA), 52 U.S.C. § 20501, et seq., by several departments of South Dakota's state government. Pending before the Court is Defendants' Motion

1

to Dismiss (Doc. 73).  The Defendants argue Plaintiffs have failed to state a claim for relief and dismissal is proper pursuant to Federal Rules of Civil Procedure 12(h), 12(c), and 12(b)(6).  Fed. R. Civ. Pro. 12(h), 12(c) and 12(b)(6). Defendants also argue Plaintiffs Lakota People's Law Project, Kimberly Dillon, and Hoksila White Mountain lack statutory and Article III standing, which necessitates their dismissal from the lawsuit.  Finally, Defendants argue Secretary of Labor Marcia Hultman should be dismissed as a defendant because the Department of Labor and Regulation does not administer programs covered by the NVRA.  For the reasons that follow, Defendants' motion is denied.

## I. Background

Among the several purposes articulated in "the motor-voter law," the National Voter Registration Act seeks "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office...."  52 USC § 20501.  To achieve this goal, the statute includes requirements to allow prospective voters to register to vote in conjunction with applying for a driver's license, 52 U.S.C. § 20504, and applying for public assistance and assistance for people with disabilities. 52 U.S.C. § 20506(a)(2). The statute sets forth a detailed list of services that voter registration agencies must provide to individuals in conjunction with registering to vote, 52 U.S.C. § 20506,

and the gist of Plaintiffs' complaint is that the State of South Dakota has failed to comply with the statutory requirements. (Doc. 44).

The process to challenge a state's implementation of and adherence to the NVRA's requirements appears at 52 U.S.C. § 20510.  The initial step in the process requires notice to the State election officer of purported deficiencies in the state's implementation of the NVRA to enable the state to correct any such deficiencies. 52 U.S.C. § 20510(b)(1). See, e.g., *Scott v. Schedler*, 771 F.3d 831, 836 (5th Cir. 2014); *Assn. of Cmty. Orgs. For Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997); *Black Voters Matter Fund v. Raffensberger*, 508 F. Supp. 3d 1283, 1293 (N.D. Ga. 2020); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 716 (S.D. Miss. 2014).  A timeframe for correction of the alleged violation is set out in the statute, and a person aggrieved by the response may file suit thereafter.  52 U.S.C. § 20510(b)(2) and (3).

In this case, attorneys for the Native American Rights Fund and DEMOS submitted a letter dated May 20, 2020, to Secretary of State Barnett on behalf of the Rosebud Sioux Tribe and its members, the Oglala Sioux Tribe and its members, Four Directions, and "others similarly situated." (Doc. 44-1).  The letter set forth numerous examples of alleged violations of the NVRA by the Department of Social Services, Department of Public Safety, and Department of Labor and Regulation, all allegedly under the supervision of the Secretary of State with

3

respect to the NVRA. Id.  The Secretary of State responded (Doc. 47, ¶ 7), and Plaintiffs responded in turn on June 26, 2020 (Doc. 44, ¶ 6).  Defendants did not respond further (Doc. 47, ¶ 7). The original Plaintiffs filed suit on Sept 16, 2020 (Doc. 1).  On February 22, 2021, Plaintiff Four Directions' claims were dismissed by stipulation (Doc. 31).   Plaintiffs filed an amended complaint on August 10, 2021, which among other things replaced Four Directions with Lakota People's Law Project and added Kimberly Dillon and Hoksila White Mountain as Plaintiffs. (Doc. 44).  The Defendants did not file an objection.  (Doc. 43).

## II. Discussion

1. Rules 12(h), 12(c) and 12(b)(6)

Defendants have invoked the procedure set forth in Federal Rule of Civil Procedure 12(h) that a motion to dismiss for failure to state a claim may be brought in the alternative as a motion for judgment on the pleadings under Rule 12(c).  Fed. R. Civ. P. 12(h)(2) and 12(c).  Once the pleadings have closed, a party may move for judgment under Rule 12(c).  *Union Insurance Company v. Scholz*, 473 F. Supp. 3d 978, 981 (D. S.D. 2020).  The same legal standard applies to ruling on motions brought under Rule 12(c) and Rule 12(b)(6).  *Id.* (citing *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009)).  As the Eighth Circuit has noted, the only distinction between the two is that a Rule 12(c) motion is filed after the pleadings have closed, while a motion pursuant to Rule 12(b)(6) cannot be brought

4

once the answer has been filed. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). In any event, this is a "formal distinction" because the two types of motion are reviewed in the same way. *Id.* (citing *St. Paul Ramsey County Med. Ctr. v. Pennington County, S.D.*, 857 F.2d 1185, 1187 (8th Cir. 1988); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987)). See generally, *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (setting forth standard for reviewing motion under Rule 12(b)(6)); *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (same).

When ruling on a motion under Rule 12(c), courts accept as true well-pleaded allegations and resolve inferences in favor of the non-moving party. *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006). Furthermore, "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Id.* In this context, a court relies on the pleadings and "must ignore all materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). The caveat to this is that the court may consider "materials that are part of the public record or do not contradict the complaint ... as well as materials that are necessarily embraced by the pleadings." *Id.*

5

2. Standing

a. Article III Standing

Defendants have moved to dismiss Plaintiffs Kimberly Dillon, Hoksila White Mountain, and Lakota People's Law Project from this lawsuit. As noted above, the Plaintiffs also include the Rosebud Sioux Tribe and its members, and the Oglala Sioux Tribe and its members. (Doc. 44). The Defendants have not moved to dismiss the latter Plaintiffs from the lawsuit, and it is clear those parties have standing under U.S. Const. art. III, § 2, cl.1 and the NVRA.

The Supreme Court has set forth the requirements for Article III standing in numerous cases. The "irreducible constitutional minimum of standing" is that a plaintiff must have suffered an "injury in fact," meaning, invasion of a legally protected interest; "there is a causal connection between the injury and the conduct complained of"; and the injury can be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (cleaned up). See also *Department of Commerce v. New York*, ___ U.S. ___, 139 S. Ct. 2551, 2565, 204 L.Ed.2d 978 (2019) (in a dispute over a citizenship question on the 2020 census, states had standing, given the potential impact on their representation in Congress).

Standing requirements seek to ensure that a litigant has a "sufficient stake in an otherwise justiciable controversy" to obtain judicial resolution of the

controversy. *Sierra Club v. Morton*, 405 U.S. 727, 731-32, 92 S. Ct. 1361, 31 L.Ed.2d 636 (1972). In the context of a Motion to Dismiss, courts review the factual allegations in the Complaint, and "presume[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889, 110 S. Ct. 3177, 3189, 111 L.Ed.2d 695 (1990). The Eighth Circuit has reinforced these requirements. See, e.g., *Carlsen v. Game Stop*, 833 F.3d 903 (8th Cir. 2016); *Keller v. City of Fremont*, 719 F.3d 931 (8th Cir. 2013); *Ashley v. U.S. Dept. of Interior*, 408 F.3d 997 (8th Cir. 2005); *National Federation of Blind of Missouri v. Cross*, 184 F.3d 973 (8th Cir. 1999).

With respect to the specific issue of organizational standing, the Supreme Court has addressed the requirements, stating that an organization must meet the same standard as an individual, i.e., injury in fact caused by the opponent and redressable by the opponent. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378, 102 S. Ct. 1114, 1124, 71 L.Ed.2d 214 (1982). In assessing whether an injury in fact had been pleaded, the *Havens* Court concluded that if the organization's counseling and referral services had been "perceptibly impaired" by Defendants' steering practices, "there can be no question that the organization has suffered injury in fact." *Id.* Specifically, the Court stated, "the concrete and demonstrable injury to the organization—with the consequent drain on the organization's

7

resources--constitutes far more than simply a setback to the organization's abstract social interests." *Id.* The Eighth Circuit also has addressed the standing issues applicable to organizations and echoed that, "Standing may be found when there is a concrete and demonstrable injury to an organization's activities which drains its resources and is more than simply a setback to its abstract social interests." *National Federation*, 184 F.3d at 979. The court requires that facts establish "distinct and palpable injuries" that can be traced to the defendant's conduct. *Id.* at 979-80 (quoting *Arkansas Acorn Fair Hous., Inc. v. Greystone Dev. Ltd.*, 160 F.3d 433, 435 (8th Cir. 1998)). See also *National Council of LaRaza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015) (organizational standing to litigate NVRA claims); *Arcia v. Florida Secretary of State*, 772 F.3d 1335, 1340-42 (11th Cir. 2014) (same); *Ga. State Conference of NAACP v. Kemp*, 841 F.Supp.2d 1320 (N.D. Ga. 2012) (same).

Pertinent to this lawsuit is the additional caveat that if any plaintiff has standing under Article III, the court need not consider whether any other party has standing. *Bowsher v. Synar*, 478 U.S. 714, 721, 106 S. Ct. 3181, 3185, 92 L.Ed.2d 583 (1986). See also *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006) (where the court determines one party has standing, "the standing of other plaintiffs is immaterial to jurisdiction") (cleaned up). That is, the standing of one party confers

jurisdiction on the court. *Id.* at 1267. This court will address the standing of all parties under Article III.

As noted, Plaintiffs Rosebud Sioux Tribe and Oglala Sioux Tribe filed suit on behalf of themselves and their members. Defendants have not moved to dismiss these parties and the court finds the Tribes have standing under Article III. *Spirit Lake v. Jaeger*, 2020 WL 625279, *3 (D. N.D. 2020) (tribe has standing to challenge North Dakota election law establishing residential street address requirements). The Rosebud Sioux Tribe and Oglala Sioux Tribe are sovereign nations with substantial populations, and the Tribes seek to vindicate the voting rights of their members. It is their prerogative to do so. See generally, *Oglala Sioux Tribe v. Van Hunnik*, 993 F.3d 1017 (8th Cir. 2014) (discussing standing of Oglala Sioux Tribe to pursue ICWA claims on behalf of tribal members to maintain tribe's integrity and to promote ICWA's goal of maintaining the security and stability of Indian families); *United States v. Santee Sioux Tribe of Nebraska*, 254 F.3d 728, 734 (8th Cir. 2001) (under *parens patriae* doctrine, tribe must act on behalf of all of its members, not just a few). The Plaintiff Tribes, on behalf of themselves and their members, have alleged that the State's alleged failure to comply with the NVRA has caused them injury in fact which can be redressed by the State's compliance with NVRA. (Doc. 44.). The court's determination that they

9

have standing means this lawsuit can proceed, regardless of the standing of any other parties.

Plaintiff Kimberly Dillon, a member of the Rosebud Sioux Tribe, has alleged injury in fact through the state's failure to comply with NVRA, specifically that she completed an application to vote at a Department of Social Services office and previously had indicated a desire to vote at a Department of Public Safety office. (Doc. 44, ¶¶ 59-61). She allegedly was provided no services at the DPS office and the voter registration form was not submitted by DSS to the proper election officials. Id. The alleged injury was caused by the State and if the injury is proven it can be redressed by the State through measures to comply with NVRA. Plaintiff Dillon has standing under Article III.

Plaintiff Hoksila White Mountain is a member of the Standing Rock Sioux Tribe. (Doc. 44, ¶ 62), one of the Tribes that comprises the Great Sioux Nation. Plaintiffs Rosebud Sioux Tribe and Oglala Sioux Tribe also are part of the Great Sioux Nation which is located in large part in western South Dakota. The Court finds Mr. White Mountain is similarly situated to the members of those tribes for the purposes of this lawsuit. He has alleged injury in fact, in that the State allegedly failed to provide an opportunity to register to vote when he applied for a driver's license (Doc. 44, ¶ 90) and when he applied for SNAP benefits at a DSS office. (Id., ¶ 130). The injury he cites was allegedly caused by the State and if

proven, is redressable by the State in implementing measures to comply with NVRA. Therefore, he has standing under Article III. The court notes that the allegations concerning his effort to run for a city office do not provide Article III standing. (Id., ¶¶ 62-64).

Lakota People's Law Project claims organizational standing. *Havens*, 455 U.S. at 378. See also *Black Voters Matter*, 508 F. Supp. 3d at 1291-92 (organizational standing to pursue NVRA claims). Lakota People's Law Project describes itself as a "nonprofit interfaith law and policy center" (Doc. 44, ¶ 51) that "has long worked to protect Native voting rights and expand Native voter participation." (Id., ¶ 52). Although one aspect of its work involves increasing participation of Native Americans in voting, it alleges it has had to increase its activity and divert its efforts from other matters in response to Defendants' alleged violations of NVRA, (id., ¶¶ 57-58), in essence, having to "drain its resources" to respond to Defendants' alleged failures to comply with NVRA. *National Federation*, 184 F.3d at 979. Defendant challenges its existence as an organization and the quantity of resources diverted, (Doc.74, PgID 644-45), but for the purposes of a motion to dismiss, Plaintiff Lakota People's Law Project's allegations are sufficient. Plaintiff has alleged facts sufficient to satisfy the pleading requirements of Rule 8, and the court finds Lakota People's Law Project has standing under Article III.

b. Standing under the National Voter Registration Act

In the context of this lawsuit, an additional standing inquiry is necessary.

The NVRA provides as follows at 52 U.S.C. § 20510:

> (b) Private right of action
> (1) A person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved.
> (2) If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

52 U.S.C. § 20510.

Thus, notice must be given to alert the relevant authorities to alleged noncompliance with the statute, so ameliorative action can be taken to ensure compliance with the NVRA's requirements.  52 U.S.C. § 20510. See, e.g., *Black Voters Matter*, 508 F.Supp.3d at 1292; *Ga. NAACP*, 841 F. Supp.2d at 1335.  It should be noted that if a person fails to comply with the notice requirement and is dismissed as a plaintiff, the person may send a notice letter and file suit subsequently.  In short, the person is not permanently barred from pursuing relevant claims if the individual also has Article III standing.

Plaintiffs Rosebud Sioux Tribe and Oglala Sioux Tribe, along with Four Directions and "others similarly situated," sent a letter on May 20, 2020, signed by attorneys from the Native American Rights Fund and DEMOS to Secretary of

12

State Barnett. (Doc. 44-1). The notice set forth numerous alleged deficiencies with respect to the State's implementation of the NVRA. Id. Although the letter of response is not attached to the pleadings, Defendant's Answer states the Secretary of State responded in June 2020. (Doc. 47, ¶ 7). Plaintiffs responded in turn on June 26, 2020. (Doc. 44, ¶ 6). Plaintiffs Rosebud Sioux Tribe and Oglala Sioux Tribe filed suit on behalf of themselves and their members, with Four Directions as an additional Plaintiff, on September 16, 2020. (Doc. 1). Plaintiff Four Directions' claims were terminated on February 22, 2021. (Doc. 31). Lakota People's Law Project, Kimberly Dillon, and Hoksila White Mountain were added as Plaintiffs when an amended complaint was filed approximately six months later. (Doc. 44). The concerns expressed in the initial letter to Defendants comprise the substance of Plaintiffs' initial and current complaints (Doc. 1 and 44), which Defendants answered (Doc. 25 and 47). Defendants have maintained the same position at each stage of this lawsuit: they have challenged Plaintiff's assertions of violations of the NVRA by the Departments of State, Social Services, and Public Safety. (Doc. 45). Defendants also have moved for dismissal of the Secretary of Labor and Regulation, arguing the Department is not an agency required to provide voter registration services under the NVRA. (Doc. 47, ¶71; doc. 74, PgID 647-48).

In their Motion to Dismiss and accompanying brief which are now before the court, (Doc. 73, 74), Defendants argue that Plaintiffs Dillon, White Mountain,

and Lakota People's Law Project lack statutory standing under the NVRA because they were not named in the May 20, 2020, letter to the Secretary of State describing the alleged failures of the State to comply with the NVRA (Doc. 74).

Courts have divided over the question whether a person who is not named in the notice letter has standing under the NVRA as a plaintiff when a lawsuit ultimately is filed. In *Bellitto v. Snipes*, 221 F.Supp.3d 1354 (S.D. Fla. 2016) the court determined that an individual who was not identified in the notice letter by name or by membership lacked standing and was dismissed from the lawsuit. The notice letter was deemed "too vague" with respect to Plaintiff's alleged injuries to enable the state to respond adequately. *Id.* at 1363. Likewise, in *Scott v. Schedler*, 771 F.3d 831 (5th Cir. 2014), the court determined the individual plaintiff's failure to provide notice was "fatal" to his lawsuit. *Id.* at 836. He could not "piggyback" onto the notice provided by the NAACP because of a lack of textual support in the NVRA and because there was no indication his notice would have been "futile." *Id.* at 836. See also, *Black Voters Matter*, 508 F. Supp. 3d at 1294-95.

On the other hand, factual distinctions from the above cases have produced the opposite results. For example, in *Ga. State Conference of NAACP v. Kemp*, 841 F.Supp.2d 1320 (5th Cir. 2014), the court faced a more complicated situation because the case included both an individual and an organization that had not provided notice in accordance with the NVRA. First, as in *Scott* and *Bellitto,* the

14

court ruled an individual plaintiff who was not named or discussed in the notice letter lacked NVRA standing. *Id.* at 1335. Its rationale was that the facts detailing the individual's circumstances that allegedly violated the NVRA were not encompassed within the notice letter, and as a result, the State had no opportunity to correct the violation. *Id.* Furthermore, once the state was advised of the particulars of the individual's case, it responded by sending a voter registration application to his counsel. *Id.* at 1336. In sum, the individual was dismissed as a plaintiff because he did not notify the state of his allegations, could not claim standing through membership in any of the plaintiff organizations or by any other means, and his case was resolved by the state. *Id.* Second, in addressing the standing of an organizational plaintiff, the court reached the opposite result. *Id.* at 1335. Plaintiff People's Agenda was not identified in the notice sent by the Georgia NAACP to the Secretary of State. The court determined, however, that the organization appeared "similarly situated" to the NAACP for the purposes of the lawsuit. *Id.* at 1334-35. More importantly, the court focused on the allegation that appeared in the notice, i.e., that the State was not providing voter registration services to individuals except in person. *Id.* at 1335. The state adhered to that position in the lawsuit. *Id.* at n. 5. Therefore, in the court's view, it would have been futile to require People's Agenda to file a separate notice with the same content as the NAACP's notice, knowing the state would continue to deny its

obligation to provide the services in question. *Id.* As a result, the court ruled the People's Agenda organization would not be dismissed from the lawsuit for lack of NVRA standing. *Id.*

The "futility" of requiring an organization to file a notice letter which would duplicate one already sent to a defendant also was addressed by the court in *Assn. of Cmty. Orgs. v. Miller*, 129 F.3d at 838. Organizations had sent a notice to the state concerning failure to comply with the NVRA and subsequently filed suit. *Id.* at 835. Additional organizations and members of a neighborhood group were also named as plaintiffs despite not having provided notices. *Id.* The state's position in the case, reinforced by an executive order from the governor, was that the state would not comply with NVRA unless the federal government supplied certain funding. *Id.* In the court's view, "Requiring these plaintiffs to give actual notice would have been unnecessary with regard to the purpose of the notice requirement" because the purpose of notice is to "provide states in violation of the Act an opportunity to attempt compliance before facing litigation." *Id.* at 838. Given the state's persistence in refusing to comply with the NVRA, additional notice would have been futile. *Id.* The additional plaintiffs were not dismissed from the lawsuit. *Id.*

Similarly, in *Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919 (S.D. Ind. 2012), Judicial Watch filed a notice alleging the State failed to comply with the

NVRA by removing the names of ineligible voters. *Id.* at 920.  Plaintiff True the
Vote had not joined the notice or sent its own. *Id.* at 922.  Nevertheless, the court
refused to dismiss True the Vote as a Plaintiff, stating it "agreed" with the
approach of the Sixth Circuit in *Miller*, 123 F.3d at 838, in which the court
"declined to dismiss certain plaintiffs from a suit under the NVRA for failing to
provide notice." 993 F. Supp. 2d at 922.  The court's rationale was that "the state
defendant had received notice from another plaintiff in the suit" and "the receipt of
duplicative notices from the additional plaintiffs would not have furthered the
purpose of the NVRA's notice requirement." *Id.*  The court ruled Plaintiff True the
Vote could remain a party to the lawsuit. *Id.* at 923.

Likewise, in *Stringer v. Pablos*, 274 F. Supp. 3d 588 (W.D. Tx. 2017), the
court declined to dismiss plaintiffs who had not given notice individually.  The
lawsuit was initiated by four voters, only two of whom were in the group of eleven
voters who submitted the NVRA notice. *Id.* at 594.  The parties exchanged
extensive correspondence, including letters from the plaintiffs who had not been
named in the initial notice. *Id.*  In addressing the defendants' claim the notice was
deficient, the court noted, "The notice requirements of the NVRA are intended to
encourage parties to pursue pre-litigation resolution of their NVRA disputes," and
that had been done. *Id.* at 595. The parties were successful at resolving some of the
issues addressed in the initial notice. *Id.*  According to the court, with respect to

the remaining claim at the heart of the lawsuit, the Defendants "flatly refused to take the steps that Plaintiffs contend are required." *Id*. at 594. Ultimately, the court denied the motion to dismiss, finding that defendants' reading of the NVRA did not accord with the statutory text.

These cases are instructive, with relevant factors including the purpose of the NVRA notice, whether the state provided the requested relief, whether plaintiffs are "similarly situated" to parties who provided notice, and whether the state's position in opposition to plaintiffs' is known and unchanging thus rendering additional notice "futile." In this case, the court determines that the current plaintiffs who were not listed in the notice letter should not be dismissed. The court's rationale is that the notice of May 20, 2020, advised Defendant of the claims at issue and designated "others similarly situated" as possible aggrieved persons. In addition, the purpose of the notice letter to is to provide information to the government agency handling voter registration to enable that agency to correct any deficiencies. The notice in this case did just that, and by responding and continuing to address these issues, the Defendant appears to have suffered no disadvantage in having one Plaintiff removed and an organization and two

individuals added.  The claims are the same*[1]; the remedy sought is the same.  All parties are represented by the same counsel.  Plaintiffs Dillon, White Mountain, and Lakota People's Law Project qualify as "persons aggrieved" by the State's alleged actions.  Therefore, the court finds Plaintiffs Dillon, White Mountain, and Lakota People's Law Project have statutory standing for the purpose of their challenge to the State's actions in conjunction with the NVRA.

---

[1] The substantive sections of Plaintiffs' Complaint (Doc. 44) correspond almost identically to sections of the Notice to the Secretary of State (Doc. 44-1), as follows:

Complaint, ¶¶ 105-114 correspond to § I.A.a.1 of the notice letter; Complaint, ¶¶ 115-120 correspond to § I.A.a.2 of the notice; Complaint, ¶¶122-28 correspond to § .I.A.a.3 of the notice; Complaint, ¶¶ 132-36 correspond to § I.A.a.4 of the notice; Complaint, ¶¶ 59-61 correspond to § I.A.a.5, I.A.a.7 of the notice; Complaint, ¶¶ 70, 155-69, 95-99, 146-63 correspond to § I.A.a.6 of the notice; Complaint, ¶¶ 137-45, 164-72 correspond to § I.A.a.7 of the notice; Complaint, ¶¶ 68, 79-83 correspond to §II.5A of the notice; Complaint, ¶¶ 84-87 correspond to § II.5B of  the notice; Complaint, ¶¶ 59-61, 88-93 correspond to § II.5C of the notice.  The claims of Hoksila White Mountain, Complaint ¶¶90, 130, are encompassed within § I.A.a.2 and II.C of the notice.  The claims of Kimberly Dillon, Complaint ¶¶ 59-61, are encompassed within § I.A.a.5. of the notice.

19

Additionally, the court determines that requiring an additional notice from Lakota People's Law Project, Kimberly Dillon and Hoksila White Mountain would require them to perform a futile gesture. The current Plaintiffs and former Plaintiff Four Directions have engaged with the Defendants in endeavoring to resolve the allegations of violation of the NVRA for almost two years at the time of this writing. Defendants remain steadfast in their position that their implementation of the NVRA is in accordance with the statute. They remain adamant that the Department of Labor and Regulation is not an agency required to provide voter registration services, as discussed more fully below. Requiring a notice to repeat what has been placed before the Defendants in numerous documents and through discovery would not provide them notice to enable them to cure any deficiencies. It would merely disrupt this lawsuit, which the Court is not willing to do.

3. Dismissal of Department of Labor and Regulation

Defendants have moved to dismiss Secretary Marcia Hultman, Department of Labor and Regulation, from the lawsuit because the department is not an agency that provides "public assistance" under the NVRA. (Doc. 74, PgID 647-48). The Defendants assert that nothing in South Dakota Codified Laws "allows the Department of Labor to administer TANF [Temporary Assistance for Needy Families]" and therefore, the Department of Labor is "not required to provide voter

registration services." (Id., PgID 648).  In support of its position, the State cites

S.D.C.L. §12-4-2 which provides in pertinent part as follows:

> Voter registration shall be conducted by each county auditor and municipal
> finance officer. Voter registration shall be available at the secretary of state's
> office and at those locations which provide driver licenses; food stamps;
> temporary assistance for needy families; women, infants, and children
> nutrition program; medicaid; military recruitment; and assistance to the
> disabled as provided by the Department of Human Services.

As Defendants note, the Department of Labor is not listed by name, but with one

exception, the statute refers to the service provided and not to the agency which

provides it.

1. The Defendants also refer to a Department of Justice website with

   information about the NVRA.  https://www.justice.gov/crt/national-

   voter-registration-act-1993-nvra.  The website does provide answers

   to frequently asked questions about the NVRA and states as follows:

   --" 'Public assistance' offices that must offer voter-registration

   services under Section 7 of the NVRA include each agency and office

   in a State that administers or provides services or assistance under any

   public assistance programs."  As Plaintiffs point out, however, their

   Complaint alleges the Department of Labor and Regulation

   participates in the administration of TANF, and refers to the

Department's website which does indicate it participates in providing

services under TANF.  (Doc. 44, ¶¶ 150-63).

More importantly, the language of the NVRA is dispositive at this juncture in the

proceedings because it provides as follows at 52 U.S.C. § 20506:

> (a) Designation
>> (1) Each State shall designate agencies for the registration of voters in elections for Federal office.
>> (2) Each State shall designate as voter registration agencies--
>>> (A) all offices in the State that provide public assistance; and
>>> (B) all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities.
>> (3)(A) In addition to voter registration agencies designated under paragraph (2), each State shall designate other offices within the State as voter registration agencies.
>> (B) Voter registration agencies designated under subparagraph (A) may include--
>>> (i) State or local government offices such as public libraries, public schools, offices of city and county clerks (including marriage license bureaus), fishing and hunting license bureaus, government revenue offices, unemployment compensation offices, and offices not described in paragraph (2)(B) that provide services to persons with disabilities; and
>>> (ii) Federal and nongovernmental offices, with the agreement of such offices.

52 U.S.C. § 20506.

The language of this provision is clear in that "all offices in the state that provide

public assistance" must provide the voter registration services described in the

NVRA.  52 U.S.C. § 20506(a)(2)(A).  Plaintiffs have alleged the Department of

Labor and Regulation provides such services and there is evidence to support the

allegation.  Therefore, the court will not dismiss Secretary Hultman from the lawsuit at this time.

## CONCLUSION

For the above-stated reasons, the Court finds Lakota People's Law Project, Kimberly Dillon, and Hoksila White Mountain have standing under Article III and the NVRA.  Furthermore, the Court finds that Plaintiffs have alleged sufficient facts concerning the Department of Labor and Regulation's participation in the provision of public assistance to avoid dismissal of Secretary Marcia Hultman from this lawsuit.

Accordingly, IT IS ORDERED that Defendant's Motion to Dismiss is denied.

Dated this ___17th___ day of May, 2022.

Lawrence L. Piersol
United States District Judge

ATTEST:

MATTHEW W. THELEN, CLERK