UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| ROSEBUD SIOUX TRIBE and their members, OGLALA SIOUX TRIBE and their members, and LAKOTA PEOPLE'S LAW PROJECT, Kimberly Dillon and Hoksila White Mountain, | 5:20-cv-5058 |
| Plaintiffs | MEMORANDUM |
| vs. | AND ORDER |
| STEVE BARNETT, in his official capacity as Secretary of State for the State of South Dakota and Chairperson of the South Dakota State Board of Elections; Laurie Gill, in her official capacity as Cabinet Secretary for the South Dakota Department of Social Services; MARCIA HULTMAN, in her official capacity as Cabinet Secretary for the South Dakota Department of Labor and Regulation; and CRAIG PRICE, in his official capacity as Cabinet Secretary for the South Dakota Department of Public Safety, | |
| Defendants | |

Pending before the Court is Plaintiffs' Motion for Summary Judgment (Doc. 76, 77) which Defendants have resisted (Doc. 93). Plaintiffs have replied to

1

Defendants' response (Doc. 99).  The United States has filed a Statement of Interest (Doc. 113).  Having considered the filings of the parties, including the statement of uncontested facts from Plaintiff and response from Defendant, the Court grants the motion in part and denies the motion in part.

## BACKGROUND

The National Voter Registration Act has a number of goals, and among them, it seeks "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office…."  52 U.S.C. § 20501. To achieve this goal, the statute includes requirements to allow prospective voters to register to vote in conjunction with applying for a driver's license, 52 U.S.C. § 20504, and applying for public assistance and assistance for people with disabilities. 52 U.S.C. § 20506(a)(2). The statute sets forth a detailed list of services that voter registration agencies must provide to individuals in conjunction with registering to vote, 52 U.S.C. § 20506, and the gist of Plaintiffs' Complaint is that the State of South Dakota has failed to comply with the statutory requirements. (Doc. 44).

The process to challenge a state's implementation of and adherence to the NVRA's requirements appears at 52 U.S.C. § 20510.  The initial step in the process requires notice to the State election officer of purported deficiencies in the state's implementation of the NVRA to enable the state to correct any such deficiencies. 52 U.S.C. § 20510(b)(1). See, e.g., *Scott v. Schedler*, 771 F.3d 831,

836 (5th Cir. 2014); *Assn. of Cmty. Orgs. For Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997); *Black Voters Matter Fund v. Raffensberger*, 508 F. Supp. 3d 1283, 1293 (N.D. Ga. 2020); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 716 (S.D. Miss. 2014).  A timeframe for correction of the alleged violation is set out in the statute, and a person aggrieved by the response may file suit thereafter.  52 U.S.C. § 20510(b)(2) and (3).

In this case, attorneys for the Native American Rights Fund and DEMOS submitted a letter dated May 20, 2020, to Secretary of State Barnett on behalf of the Rosebud Sioux Tribe and its members, the Oglala Sioux Tribe and its members, Four Directions, and "others similarly situated." (Doc. 44-1).  The letter set forth numerous examples of alleged violations of the NVRA by the Department of Social Services, Department of Public Safety, and Department of Labor and Regulation, all allegedly under the supervision of the Secretary of State with respect to the NVRA. Id.  The Secretary of State responded (Doc. 47, ¶ 7), and Plaintiffs responded in turn on June 26, 2020 (Doc. 44, ¶ 6).  Defendants did not respond further (Doc. 47, ¶ 7). The original Plaintiffs filed suit on Sept 16, 2020 (Doc. 1).  On February 22, 2021, Plaintiff Four Directions' claims were dismissed by stipulation (Doc. 31).   Plaintiffs filed an amended complaint on August 10, 2021, which among other things replaced Four Directions with Lakota People's Law Project and added Kimberly Dillon and Hoksila White Mountain as Plaintiffs.

(Doc. 44).  The Defendants did not file an objection.  (Doc. 43).  Subsequently

Defendants filed a Motion to Dismiss (Doc. 73), which Plaintiffs resisted (Doc.

92).  Plaintiffs filed a Motion for Summary Judgment (Doc. 76) which Defendants

resisted (Doc. 93).

## LEGAL STANDARD—SUMMARY JUDGMENT

According to Rule 56(c) of the Federal Rules of Civil Procedure, summary

judgment shall be entered "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c). *Garrison v. ConAgra Foods

Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P.

56(c)).  As the Eighth Circuit has noted, "[S]ummary judgment is not disfavored

and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004,

1011 n.2 (8th Cir. 2012) (quoting *Celotex v. Catrett*, 477 U.S. 317, 327 (1986)).

When a court is asked to review a motion for summary judgment it examines "the

record in the light most favorable to the nonmoving party ... drawing all reasonable

inferences in that party's favor." *Whitney v. Guys*, 826 F.3d 1074, 1075 (8th Cir.

2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923-24 (8th Cir. 2004)). See also

*AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987); *Kirkendall v. Shur-

Co*, 2007 WL 1574423, *1 (D. S. D. 2007).

The moving party bears the burden of showing both the absence of a genuine

issue of material fact and its entitlement to judgment as a matter of law.  Fed. R.

Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

Once the moving party has met its burden, the non-moving party may not rest on

the allegations of its pleadings but must set forth specific facts, by affidavit or

other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.,* 838 F.2d 268, 273–74 (8th Cir.1988). See also *Pinchas v. USA Deaf Sports Federation, Inc*., 457 F.Supp.2d 937 (8th Cir. 2006).

Furthermore, the Eighth Circuit has described the plaintiff's complaint as follows: "A plaintiff's verified ... Complaint is the equivalent of an affidavit for purposes of summary judgment and a complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994–95 (8th Cir.2001) (citations omitted). See also *Running Shield v. Huether*, 2018 WL 3651353, *2 (D.S.D. 2018)

Local rules in this district provide additional requirements for parties with respect to motions for summary judgment.  First, all motions for summary judgment must be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. D. S.D. LR 56.1(A).   Further the opposing party is required to respond to the movant's statement of material facts with "a separately numbered response and appropriate citations to the record" and also must "identify any material facts on which there exists a genuine material issue to be tried." Id. 56.1(B).   Material facts set forth in the movant's statement of material facts are deemed "admitted unless controverted by the opposing party's response to the moving party's statement of material facts." Id. 56.1(D).  See also *On Target Sporting Goods, Inc. v. Attorney General of the United States*, 472 F.3d 572, 574 (8th Cir. 2007).

Plaintiffs filed a statement of undisputed facts (PSUF) (Doc. 78) with supporting declarations.  Defendants responded (Doc. 94).

**ANALYSIS**

1.  Department of Public Safety (DPS)-- Plaintiffs have alleged that the Department of Public Safety (DPS) has failed to comply with NVRA (Section 5) in numerous respects (Doc. 44, 76, 77), which Defendants deny (Doc. 47, 93).

    a.  Change of voter's address--Plaintiffs allege DPS violates 52 U.S.C. § 20504(d) of the NVRA which provides as follows:

> d--Any change of address form submitted in accordance with State law for purposes of a State motor vehicle driver's license shall serve as notification of change of address for voter registration with respect to elections for Federal office for the registrant involved unless the registrant states on the form that the change of address is not for voter registration purposes.

52 U.S.C. § 20504.

    Plaintiffs assert the statute requires that the voter registration form provide that the voter must opt out of having the form count as a voter registration form. Plaintiffs allege the form promulgated by DPS does the opposite—it requires the voter to opt in to have the change of address count as a change for voter registration.  (Doc.44, ¶¶ 80-82; Doc 77, PgID 674; PSUF 214, 221). Defendants agree that the DPS form requires a voter to opt-in. (Doc. 94, PgID 4046). Defendants submit the situation in South Dakota is "unique" with respect to the circumstances and the training provided to its officers, and that its version of the form is "necessary" to meet those circumstances. (Doc. 93, PgID 2541-44).

    A number of cases have addressed the opt-in versus opt-out approach as satisfying the requirements of the NVRA at §§ 20504 and 20506. *Valdez v. Squier*, 676 F.3d 935, 946-47 (10th Cir. 2012) (unless form so states, failure to check box does not constitute declination in writing; applicant must affirmatively opt-out of receiving voter registration form); *League of Women Voters of Missouri v.*

*Ashcroft*, 336 F. Supp.3d 998, 1003 (W.D. Mo. 2018) (voter registration services should be provided with any change of address form); *Stringer v. Pablos*, 274 F. Supp. 3d 588, 597 (W.D. TX 2017) (policy conflicts with NVRA requirement that driver's license renewal and change of address have equal effect as voter registration forms); *Ass'n of Cmty. Orgs. for Reform Now, NC v. Strach,* 216 F. Supp. 3d 597, 639-40 (M.D. NC 2016) (non-response on public assistance application is not a declination of voter registration form). But see *Scott v. Schedler*, 771 F.3d 831, 840 (5th Cir. 2014) (failure to check box on form is declination to register to vote).

The Court finds that the language of § 20504(d) mandates that the voter's change of address form automatically serves as a change of address for voter registration purposes unless the voter opts-out.  To the extent DPS's form provides otherwise, it is not in compliance with the NVRA and the Court grants summary judgment on this issue.

b.  Voter who lacks driver's license or Social Security number—Plaintiffs allege DPS fails to comply with the requirements of 52 U.S.C. § 20504(c)(2)(B). (Doc 77 PgID 676; PSUF 221-222).  The statute provides as follows:

> **(2)** The voter registration application portion of an application for a State motor vehicle driver's license--
>> **(A)** may not require any information that duplicates information required in the driver's license portion of the form (other than a second signature or other information necessary under subparagraph (C));
>> **(B)** may require only the minimum amount of information necessary to--
>>> **(i)** prevent duplicate voter registrations; and
>>> **(ii)** enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process;

52 U.S.C. § 20504.

Plaintiffs submit that all that can be required under this section is a signature of the voter on the voter registration form. See generally, *Fish v. Kobach*, 840 F.3d 710, 722 (10th Cir. 2016) (State's requirement of proof of citizenship violated NVRA's requirement that only the minimum amount of information to show eligibility and prevent duplication can be required for voter registration).

Plaintiffs challenge Defendants' procedure embodied in State Board of Election Rule 5:02:03:21 which requires that a person who lacks a driver's license or Social Security Number (SSN) must appear and submit an affidavit in the presence of the County Auditor. Defendants cite SDCL § 12-4-5.4 which requires that a voter who lacks a driver's license, SSN, or nondriver ID card must register to vote at the County Auditor's office. (Doc. 93, PgID 2544).  They argue this complies with the Help America Vote Act (HAVA), 52 U.S.C. § 20901, and cite *McKay v. Thompson*, 226 F.3d 752, 756 (6th Cir. 2000) in support.  *McKay* held that it does not violate the NVRA for state law to require use of the Social Security number to vote.  *Id.*

The United States, as amicus curiae, cites the Elections Clause, Art. I, § 4, for the proposition that state election laws must give way to those promulgated by Congress.  Amicus also takes the position that the state has misinterpreted HAVA and that its refusal to provide voter registration services at DPS offices to those who lack a Social Security Number or driver's license violates the NVRA (Doc. 113).  Amicus argues that HAVA does not conflict with or restrict NVRA, citing 52 U.S.C. § 21145.  See *Gonzalez v. Arizona*, 624 F.3d 1162, 1185 (10th Cir. 2010) (individual who lacks SSN or driver's license should be assigned a unique identifying number but not be denied voter registration services).

The pertinent section of HAVA is 52 U.S.C. § 21083(a)(5)(A) which provides as follows:

(ii) Special rule for applicants without driver's license or social security number. If an applicant for voter registration for an election for Federal office has not been issued a current and valid driver's license or a social security number, the State shall assign the applicant a number which will serve to identify the applicant for voter registration purposes. To the extent that the State has a computerized list in effect under this subsection and the list assigns unique identifying numbers to registrants, the number assigned under this clause shall be the unique identifying number assigned under the list.

52 U.S.C. § 21083(a)(5)(A)(ii).

When this section of HAVA is read in conjunction with the pertinent provision of the NVRA, it is evident the State's interpretation of the two statutes is incorrect. The State cannot deny voter registration services at DPS offices. This need not be disruptive to DPS's administration of voter registration services. Amicus United States has suggested a means of remedying the situation, which is for the State to consider. (Doc. 113, PgID 7326).

The Court finds that DPS's current method for addressing the situation of prospective voters who lack a driver's license, SSN, or ID card fails to comply with the NVRA's requirement to provide voter registration services, and grants Plaintiffs' motion for summary judgment on this issue.

c. Submission of forms to election officials- Plaintiffs allege DPS has failed to comply with 52 U.S.C. §§ 20504(a)(1) and 20504(c)(2)(E) governing forwarding of voter registration applications to the proper officials. (Doc. 77, PgID 677; PSUF 214, 105-07). While Defendants dispute the allegation, the answers to the relevant PSUF indicate Defendants acknowledge such issues have existed as the Secretary of State has endeavored to address problems with DPS's forwarding of forms. (Doc. 94, PgID 4019).

52 U.S.C. § 20504(a)(1) provides as follows:

a) In general
> (1) Each State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority under State law shall serve as an application for voter registration….

52 U.S.C. § 20504(a)(1).

In addition, 52 U.S.C. § 20504(c)(2)(E) provides:

(c) Forms and procedures…
> 2) The voter registration application portion of an application for a State  motor vehicle driver's license—
>> (E) shall be made available (as submitted by the applicant, or in machine readable or other format) to the appropriate State election official as provided by State law.

52 U.S.C. § 20504(c)(2)(E).

Plaintiffs allege that DPS is responsible for numerous errors in transmitting the voter registration applications to the election official, i.e., the County Auditor. Defendants do not deny the claim that applications were not forwarded, (Doc. 99, PgID  2546), but question whose responsibility it was to ensure the applications did not contain errors preventing their transmission. Defendants argue human error is inevitable in processing such applications. (Id.)

Recognizing that proper training and procedures can minimize such error, the Court finds that Defendants were not in compliance with § 20504 in carrying out the responsibility to forward voter registration applications.  Plaintiffs' motion for Summary Judgment on this claim is granted.

d. Voter registration in Indian Country: problems with issue sites-- Plaintiffs allege that voter registration services at "issue sites" are inadequate. (Doc. 77, PgID 678). "Issue sites" are established where DPS does not have a driver's license office but contracts with another government agency to provide driver's

license services.  Such an office exists in Dupree, SD, for example, which is located in Ziebach County within the Cheyenne River Sioux Reservation. Plaintiffs allege some of the sites do not provide voter registration services. (Id.; PSUF 229).  They allege prospective voters may be sent to a County Treasurer's or County Auditor's office.  (Id.; PSUF 233). Plaintiffs assert there are issues with training and oversight of employees at those sites with respect to the NVRA.  (Id.). Defendants challenge Plaintiffs' description of training deficiencies at issue sites as "immaterial" even if undisputed.  (Doc 94, PgID 4050).

As quoted in § 1.e above, 52 U.S.C. § 20504(a)(1) mandates that a driver's license application shall serve as a voter registration application.  To the extent an issue site provides driver's licenses services, it must comply with NVRA, and the State cannot avoid this responsibility because the "issue site" is run by an agency other than DPS.  See, e.g., *Harkless v Brunner*, 545 F.3d 445, 457 (6th Cir. 2008) (Director cannot avoid responsibility for implementation of NVRA because certain tasks were delegated to other departments); *U.S. v. New York*, 255 F. Supp. 2d 73, 79 (E.D. NY 2003) (same).

The Court finds that "issue sites" qualify as sites which are subject to the NVRA, and Plaintiffs' motion for summary judgment on this issue is granted.

e.  DPS does not monitor its compliance with Section 5, NVRA

Plaintiffs allege DPS fails to monitor its own compliance with the pertinent sections of the NVRA. (Doc 77, PgID 679; PSUF 245-49). Defendants do not dispute several of Plaintiffs' assertions about training and oversight of DPS's implementation of NVRA, characterizing several as "undisputed but immaterial." (Doc. 94, 4054, responding to PSUF 245-49).

Given the Court's assessment of the flaws in DPS's implementation of and compliance with NVRA discussed above, the Court grants Plaintiffs' motion for summary judgment on this claim.

2.  Department of Social Services (DSS)—Plaintiffs have alleged numerous violations of the NVRA (Section 7) by Defendant Department of Social Services, (Doc. 44), and have moved for summary judgment.  (Doc. 76, 77).  Defendants resist the motion (Doc. 93).

a.  Failure to provide voter registration form if applicant fails to answer the voter preference question-- Plaintiffs allege Defendant DSS failed to comply with 52 U.S.C. § 20506(a)(6)(A) which provides as follows:

> 6) A voter registration agency that is an office that provides service or assistance in addition to conducting voter registration shall--
>> (A) distribute with each application for such service or assistance, and with each recertification, renewal, or change of address form relating to such service or assistance--
>> (i) the mail voter registration application form described in section 20508(a)(2) of this title, including a statement that--
>>> (I) specifies each eligibility requirement (including citizenship);
>>> (II) contains an attestation that the applicant meets each such requirement; and
>>> (III) requires the signature of the applicant, under penalty of perjury; or
>> (ii) the office's own form if it is equivalent to the form described in section 20508(a)(2) of this title,
> unless the applicant, in writing, declines to register to vote;

52 U.S.C. § 20506(a)(6)(A).

Plaintiffs also claim Defendants' actions in this respect do not comply with the following section at 52 U.S.C. § 20506(B)(iii) which reads as follows:

> (B) provide a form that includes--
> (i) the question, "If you are not registered to vote where you live now, would you like to apply to register to vote here today?";

> (ii) if the agency provides public assistance, the statement, "Applying to register or declining to register to vote will not affect the amount of assistance that you will be provided by this agency.";
> (iii) boxes for the applicant to check to indicate whether the applicant would like to register or declines to register to vote (failure to check either box being deemed to constitute a declination to register for purposes of subparagraph (C)), together with the statement (in close proximity to the boxes and in prominent type), "IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME.";

52 U.S.C. § 20506(B)(iii).

Plaintiffs allege that prior to Plaintiffs' NVRA notice letter in May 2020, Defendants did not comply with the above provisions of the statute, instead requiring prospective voters to opt-in to register to vote, rather than opt out. (Doc.44, PgID 451-52; Doc. 77, PgID 682-83).  Plaintiffs further allege that after they put Defendants on notice of this deficiency, DSS changed its form in July 2020 to comply with the statute. (Id.)  Defendants counter that perhaps their prior procedure was correct, meaning it was not in violation of the NVRA, citing *Scott v. Schedler*, 771 F.3d 831 (5th Cir. 2014.  Defendants acknowledge that now DSS's form uses the opt-out language, and adds that it is not required to reach out to voters who may have received the pre-July 2020 form to provide the opportunity to register to vote. (Doc 93, PgID 2551-53).

The Court joins many other courts in finding the language of the above provisions requires the State to provide a voter registration form to a prospective voter unless that person declines in writing to register to vote. See, e.g., *Valdez*, 676 F3d at 946-47; *Ass'n of Cmty. Orgs.*, 216 F. Supp.3d at 639-40.  That is, the State must use a form that requires voters to opt out of the voter registration process, rather than require them to opt in.

The Court finds that DSS failed to comply with the requirements of the provisions cited above and grants summary judgment on this issue.

b.  Failure to provide required assistance to applicants--Plaintiffs allege Defendants have failed to provide assistance to those wishing to register to vote as required by the NVRA (Doc. 77, PgID 683, PSUF 291-93).  52 U.S.C. § 20506(a)(6)(C) provides as follows:

> **(6)** A voter registration agency that is an office that provides service or assistance in addition to conducting voter registration shall—
>> **(C)** provide to each applicant who does not decline to register to vote the same degree of assistance with regard to the completion of the registration application form as is provided by the office with regard to the completion of its own forms, unless the applicant refuses such assistance.

52 U.S.C. § 20506(a)(6)(C).

Defendants resist, asserting DSS does provide assistance if requested, and endeavors to ensure blank lines are completed.  DSS also asserts it trains its staff properly and tries to contact prospective voters with problematic applications, although they may be difficult to reach. (Doc. 93, PgID 2554-58; Doc. 94, PgID 4063-65).

The Court finds this allegation requires an assessment of the quality and quantity of assistance DSS renders to prospective voters.  Plaintiffs' allegation and Defendants' response raise questions of fact.  Plaintiffs' motion for summary judgment on this issue is denied.

c.  Failure to provide assistance with some covered transactions- Plaintiffs assert DSS fails to pose the voter preference question or provide assistance with some covered transactions, including (1) change of address, and (2) the 6-month review of Supplemental Nutrition Assistance Program (SNAP) and Temporary

Assistance for Needy Families (TANF) benefits, thus failing to comply with 52 U.S.C. § 20506(a)(6)(C), quoted in para. 2.a. above.

(1) Plaintiffs allege Defendants fail to pose the voter preference question or provide assistance for changes of address transactions by SNAP, TANF and MEDICAID recipients. (Doc. 77, PgID 684; PSUF 269-70). Further, voter registration assistance is not provided for changes of address done by phone. (Id.)  Defendants dispute part of the facts stated in PSUF 270, but as relevant here, respond that voter registration assistance is not required for changes of address in phone transactions. (Doc. 93, PgID 2558).

The Court finds that voter registration assistance is required for changes of address, including those done by phone.  The language of §20506(a)(6), cited in 2.a above, states that "a voter registration agency" shall distribute with each "change of address form… the mail voter registration application form."  No exception for changes of address done by phone appears in this or any other section.  See, e.g., *League of Women Voters*, 336 F. Supp. 3d at 1003; *Ga. Sate Conference of NAACP v. Kemp*, 841 F. Supp. 2d 1320, 1329 (N.D. Ga. 2012); *Ass'n Cmty. Orgs.*, 216 F. Supp.2d at 621-22.

The Court finds that Defendants have failed to comply with 52 U.S.C. § 20506(a)(6)(A)(i), and summary judgment is granted to Plaintiffs on this issue.

(2)  Plaintiffs allege the administrative renewals and six-month attestation of resources is a "recertification or renewal" encompassed within 52 U.S.C. § 20506(A), and therefore, voter registration services must be provided. (Doc. 77, PgID 684-85).  Defendants respond that these actions are neither recertifications or renewals, and therefore are not covered by § 20506(a)(6).  (Doc. 93, PgID 2559).  The deposition of Julie Miller, the organizational witness for DSS, provides additional insight on this issue.  The Court understands her testimony to establish that the six-month attestation of resources is a recertification

15

and renewal within the purview of the NVRA.  (Doc. 93-3, Ex. 9, PgID 3052-57).
The Court further understands that an administrative renewal, while it does not
require an application from the recipient, is a renewal within the NVRA. (Id.)  To
the extent DSS issues a letter in conjunction with the administrative renewal, that
document can offer the voter registration services.

The Court finds Defendant have failed to comply with 52 U.S.C.  §
20506(A) in this context, and Plaintiffs' motion for summary judgment on this
issue is granted.

d.  Failure to submit voter registration applications to election officials in a
timely fashion—Plaintiffs allege Defendants routinely submit voter registration
applications to election officials in violation of 52 U.S.C. § 20506(a)(4)(A)(iii)
which provides as follows:

> (4)(A) At each voter registration agency, the following services shall be
> made available: …
>> (iii) Acceptance of completed voter registration application forms for
>> transmittal to the appropriate State election official.

52 U.S.C. § 20506(a)(4)(A)(iii).

Further, 52 U.S.C. § 20506(d) provides as follows:

> d) Transmittal deadline
>> (1) Subject to paragraph (2), a completed registration application
>> accepted at a voter registration agency shall be transmitted to the
>> appropriate State election official not later than 10 days after the date
>> of acceptance.
>> (2) If a registration application is accepted within 5 days before the
>> last day for registration to vote in an election, the application shall be
>> transmitted to the appropriate State election official not later than 5
>> days after the date of acceptance.

52 U.S.C. § 20506(d).

16

Plaintiffs allege the applications are submitted late at times, and that there is confusion about the appropriate date stamp that should be on the application, i.e., whether it should be the date signed by the applicant or a later date that is the date of transmittal or receipt in the County Auditor's office.  (Doc. 77, PgID 686; PSUF 178-80).  Defendants do not dispute the facts concerning the dates the agencies use for voter registration forms. (Doc. 94, PgID 4038, response to PSUF 178-80). Defendants further respond that DSS's policy in the past was to send voter registration applications to the County Auditor once per week, and now apparently the policy has changed so that applications are forwarded on a daily basis.  (Doc. 93, PgID 2559).

The Court finds untimely submission of voter registration forms to the proper election official by DSS violates 52 U.S.C. § 20506(a)(4)(A)(iii) and grants Plaintiffs' motion for summary judgment on this issue.

e.  Failure to provide voter registration services to people with a conviction for a felony but who are eligible to vote—Plaintiffs allege DSS routinely fails to provide voter registration services to prospective voters who have been convicted of a felony but who are eligible to vote. (Doc. 77, PgID 686). Plaintiff provides two examples of people who have served their sentences and were not provided services, as gleaned from Plaintiffs' investigation.  (Id.)  The pertinent statute is S.D.C.L. § 12-4-18, which provides that a person who is serving a sentence for a felony conviction is removed from the voter rolls.

Defendants dispute Plaintiffs' PSUF 372-73 (Doc. 94, PgID 4088), raising a hearsay objection.  Defendants cite *Walker v. Wayne County, Iowa*, 850 F.2d 433 (8th Cir. 1988) for the proposition that the court in ruling on a summary judgment

motion may not consider hearsay.  (Doc. 93, PgID 2560).  *Walker* addressed the problem of double hearsay in the context of a summary judgment motion.  *Id.* at 435.   The court stated that if unchallenged, hearsay may be considered but clarified that once challenged the opponent must demonstrate admissibility.  *Id.* The court ultimately found the district court did not err because witnesses with personal knowledge would testify at trial. *Id*.   In the case at bar, Plaintiffs responded to Defendants' hearsay objection by stating witness testimony would be introduced at trial.  (Doc. 99, PgID 4199-4200).  The substance of such testimony was not presented.  The Court will not consider the hearsay statements.  *Northstar Mut. Ins. Co. v. Antonie*, 2009 WL 790190, *3 (D. S.D. 2009).

The Court finds that to the extent individuals with a felony conviction are not provided voter registration services because State employees mistakenly assume they are not eligible to vote, Defendants have violated the NVRA. However, the Court denies summary judgment on this issue because whether Defendants deny such services raises a question of fact.  The Court will hear evidence on whether employees are trained to reinstate individuals who have served their terms of imprisonment and probation onto the voter rolls.

f.  Failure to train DSS staff prior to 2020 and subsequently using inadequate training—Plaintiffs allege Defendants failed to train staff properly prior to Plaintiffs' sending a NVRA notice letter in May 2020.  (Doc. 77, PgID 687). Plaintiffs further allege Defendants revised their training program in response to Plaintiff's letter, but that training remains deficient.  (Id., PgID 688).

Defendants' response indicates that DSS employees have received on the job training (Doc. 93, PgID 4079-80) and that DSS uses a "train the trainer" model. (Id.)  Defendants assert the training materials currently in use are adequate.

Based on the failure of DSS to comply with NVRA Section 7 noted above in this Memorandum subsections 2.a, 2.c, and 2.d, the Court finds that the failures were due at least in part to inadequate training of employees so they would understand and implement the NVRA requirements.  The Court grants Plaintiffs' motion for summary judgment on this issue.

g.  Failure to monitor its compliance with NVRA—Plaintiffs allege DSS failed to monitor its compliance with the NVRA prior to 2021, and that its current efforts to monitor it are inadequate.  (Doc. 77, PgID 689-90.

Defendants respond that DSS has not failed in this respect.  (Doc. 93, PgID 2563).  Defendants assert that not all of the alleged violations of NVRA are, in fact, violations.  For example, Defendant identifies the six-month renewal (PSUF 285) (Doc. 94, PgID 4061-62) as not violating the NVRA, but this Court has determined that DSS's treatment of those processes do violate it.  The same is true for changes of address by phone (PSUF 273) (Id., PgID 4062).   Defendants assert that, for example, supervisor verification that a ballot was mailed (PSUF 266) (id., PgID 4058), and tracking of data (PSUF-275) (id., PgID 4061) do not allege NVRA violations.   If, however, the question is failure to monitor its compliance with NVRA, DSS's actions as alleged do demonstrate DSS's failure. (Doc. 94, PgID 4058-61).

The Court finds DSS's monitoring of its compliance has been inadequate, and therefore grants Plaintiffs' motion for summary judgment on this issue.

3.  Department of Labor and Regulation—

Plaintiffs have alleged that the Department of Labor and Regulation (DLR) is an agency that is required to provide voter registration services pursuant to NVRA, Section 7, 52 U.S.C. § 20506(a)(2)(A).  (Doc. 44).  Defendants resist that characterization of DLR's obligations. (Doc.  73).   While Plaintiffs moved for

summary judgment on this issue, they have now revised their motion with respect to DLR.  (Doc. 99, Pg ID 4215, FN5).  Plaintiffs contend that summary judgment is appropriate with respect to DLR's role in the provision of benefits under the Temporary Assistance for Needy Families (TANF) program.  (Id.)  They concede that additional fact-finding is appropriate with respect to DLR's activities in the Supplemental Nutrition Assistance Program (SNAP) and other programs, and therefore agree that summary judgment on this aspect of their motion is inappropriate.  (Doc. 99, PgID 4215, FN 5).

The Court recognizes that DLR has not been designated as a "voter registration agency" by S.D.C.L. § 12-4-5.4.  See 52 U.S.C. § 20502(5).  The NVRA requires that agencies that "provide services" under designated programs provide voter registration services, however, and it is conceded by Defendants that DLR participates to some extent, at least at the preliminary stages, in the provision of services to applicants for public assistance. (Doc. 94, PgID 4083-87).  Because the facts about DLR's involvement in the provision of public assistance and its concomitant responsibilities under NVRA are in dispute, summary judgment is denied.

Defendants challenge Plaintiffs' addition of allegations concerning DLR's alleged failure to comply with the NVRA with respect to DLR's administration of the Supplemental Nutrition Assistance Program (SNAP) and Workforce Innovation and Opportunity Act (WIOA).  Plaintiffs did allege that SNAP is a public assistance program and that DLR was involved in its administration.  (Doc. 44, ¶ 95, PgID 450). The allegations concerning WIOA did not appear in Plaintiffs' Amended Complaint (Doc 44).  The allegations appeared in Plaintiffs' Brief in Support of Motion for Summary Judgment (Doc. 77, PgID 692), and Plaintiffs essentially assert Workforce Innovation and Opportunity Act (WIOA)

benefits are akin to Temporary Assistance for Needy Families (TANF) benefits. Whether they are equivalent is a question of fact.

Defendants cite authority for the proposition that Plaintiff may not allege claims against DLR at this point in the litigation because they did not appear in the complaint, citing *Satcher v. University of Arkansas at Pine Bluff Bd. Of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009); *A. L. ex rel. Limkemann v. Jake's Fireworks, Inc.*, 456 F. Supp. 3d 1074, 1081 (S.D. Iowa 2020). But see *WireCo WorldGroup Inc. v. Liberty Mutual Fire Insurance Co.*, 897 F.3d 987, 992 (8th Cir. 2018). *WIreCo* is particularly instructive in this case, because it emphasizes that dismissal of plaintiff's claim was appropriate given that it propounded a new "theory of liability." *Id.* at 992-93. See also *Gruttemeyer v. Transit Authority*, case no 20-2333 (8th Cir. 2022) (discussing factual premise of plaintiff's claim and adequacy of notice to defendant). That is unlike the situation before the Court, where the endeavor is to determine whether a state agency is in compliance with a federal statute mandating certain requirements if the agency "provides services" governed by the statute. That is far different from analyzing a "theory of liability."

The Court denies the motion for summary judgment on this issue and due to the questions of fact posed by Plaintiffs' allegations and Defendants' responses, will hear evidence on the equivalence of Temporary Assistance for Needy Families (TANF) and Workforce Innovation and Opportunity Act (WIOA) benefits, as well as on the involvement of the Department of Labor and Regulation in the provision of benefits under the Supplemental Nutrition Assistance Program (SNAP).

4. Secretary of State—

Plaintiffs allege numerous failures to comply with NVRA by the South Dakota Secretary of State as outlined below. Plaintiffs' Complaint asserts that as

the chief elections official in the state, the Secretary of State has obligations with respect to implementation of the NVRA, with which he has not complied.  (Doc. 44,  ¶¶ 67, 80, 178, 180) (PSUF 136, 147, 153-54, 248-52, 343).   Plaintiffs' focus appears to be on a lack of training, guidance, and monitoring of DPS and DSS. (Doc. 77, PgID 692-99).  Defendants do not dispute these facts.  (Doc. 94). Defendants assert that Plaintiffs' Complaint does not allege specific noncompliance by the Secretary of State, other than with the change of address problem (Doc. 93, PgID 2570), so is barred from raising any additional allegations now.

From the earliest stage of the dispute between the parties, the Plaintiffs have advised the Secretary of State, as chief elections officer, of areas of possible noncompliance with the NVRA.  The Plaintiffs' letter of May 20, 2020 is addressed to the Secretary of State and asks the Secretary to take remedial action with respect to the agencies under his supervision.  (Doc. 44-1).  The Court will determine whether and to what extent the Secretary has failed to comply with NVRA, given that the Secretary's obligation to comply with the statute is independent of Plaintiffs' allegations in the Complaint. There is no problem with adequate notice, given that the Secretary of State was a recipient of the Plaintiffs' May 2020 letter concerning possible violations of the NVRA and has participated in this lawsuit which followed.

The NVRA requires that each state designate an officer to coordinate NVRA responsibilities, as provided in 52 U.S.C. § 20509 which reads as follows:

> Each State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter.

S.D.C.L. § 12-1-5 creates the state board of elections and designates the Secretary of State as its Chair. S.D.C.L. §12-4-33 provides: "The secretary of state is the

chief state election official pursuant to section 10 of the National Voter Registration Act of 1993."

a.  Failure to provide adequate training—Plaintiffs allege the Secretary of State has not provided adequate training to public assistance agencies and the County Auditors, (PSUF 166, 168-70, 177-81, concerning their obligations under NVRA.  (Doc. 77, PgID 693-94).  Defendants assert that Plaintiffs' Complaint does not specifically address these agencies, (Doc. 93, PgID 2570).  Defendants also assert the training is adequate and dispute some of the facts alleged by Plaintiffs.   (Id., PgID 2571; Doc. 94).

With respect to County Auditors, S.D.C.L. § 12-4-2 provides as follows: "The county auditor has complete charge of maintaining and safeguarding the voter registration records in the county." As is evident, this statute makes the County Auditor an integral part of the voter registration process.  To the extent that errors at the DPS and DSS level occur, they prevent the County Auditor from complying with the dictates of this statute.  Where lack of training and oversight of DPS's and DSS's activities by the Secretary of State with respect to NVRA prevent the County Auditors from complying with S.D.C.L. § 12-4-2, in turn, the Secretary of State's oversight is deficient and the Court grants Plaintiffs' motion for summary judgment on this issue.

The Court has determined that both DPS, § 1 above, and DSS, § 2 above, have erred in several ways in implementation of NVRA.   The Court finds that inadequate training and oversight have contributed to these deficiencies and grants Plaintiffs' motion for summary judgment on this issue.

b.  Failure to provide accurate information to voter registration agencies— Plaintiffs allege the Secretary of State failed to provide accurate information to County Auditors and voter registration agencies, by failing to instruct on their

obligations under the NVRA.  (Doc. 77, PgID 695).  Plaintiffs assert that agencies were told incorrectly to forward incomplete voter registration applications to County Auditors, and the forwarding agencies and Auditors were not told how to address errors, including lack of an address (Id.)  Plaintiffs also allege the agencies were not given correct information on the proper response when an individual lacked a driver's license or Social Security number.  (Id.).  Defendants respond that the agencies are properly trained on these issues. (Doc. 93, PgID 2571-72).

The Court determines that the Secretary's past failure to provide correct information to the voter registration agencies in this regard constitutes a violation of the NVRA, and grants Plaintiffs' motion for Summary Judgment on this issue.

c.  Impact on failings of DPS—Plaintiffs allege Defendants have failed to conduct proper oversight in accordance with 52 U.S.C. § 20509, quoted above, § 4. Plaintiffs allege the Secretary of State's lack of leadership has resulted in inadequate training of DPS personnel, insufficient oversight, and computer errors. (Doc. 77, PgID 696-98) (PSUF 105-118, 120-22, 212-226).  Defendants dispute the facts asserted by Plaintiffs, in part as to substance and in part as to form, and respond that the Secretary's actions have been adequate to comply with NVRA. (Doc. 93, PgID 2572-74).

The Court has granted summary judgment to Plaintiffs with respect to DPS's violations detailed in § 1, above.  The Court finds the Secretary of State, as the chief elections officer responsible for implementation of NVRA, contributed to these failings through inadequate training and oversight, and therefore grants summary judgment to Plaintiffs on this issue.

d.  Failure to monitor public assistance agencies—Plaintiffs allege the Secretary of State has failed to monitor public assistance agencies' compliance with the NVRA, and names the Department of Social Services, Department of Labor and Regulation, and Department of Health in this regard.  (Doc. 77, PgID

24

698-99).  Defendants resist this characterization of the Secretary of State's oversight, (Doc. 93, PgID 2574), and also argue Plaintiffs cannot for the first time allege lack of supervision of an additional agency, i.e., the Department of Health through its administration of the Women, Infants, and Children (WIC) Program. Defendants assert the Secretary's supervision of the public assistance agencies with respect to NVRA is sufficient.

(1) The Court has granted summary judgment with respect to the failure of the Department of Social Services to comply with NVRA, see § 2, above. The Court finds the Secretary of State contributed to these failings through inadequate training and oversight of DSS, and therefore grants summary judgment to Plaintiffs on this issue.

(2) The Court has deferred judgment with respect to DLR at Plaintiffs' request.  Summary judgment on this issue is denied.

(3) The Plaintiffs have not supported their allegations about deficiencies in the Department of Health's role in NVRA and summary judgment on this issue is denied.

**CONCLUSION**

Plaintiffs have supported their claims of improper implementation of the NVRA by the Secretary of State, Department of Public Safety, and Department of Social Services as described above.

Accordingly, IT IS ORDERED as follows:

1.  Plaintiffs' motion for summary judgment is granted as stated above with respect to the claims described in §§ 1.a; 1.b; 1.c; 1.d; 1.e; 2.a; 2.c(1); 2.c(2); 2.d; 2.f; 2.g; 4.a; 4.b; 4.c; 4.d(1).

2.  Plaintiff's motion for summary judgment is denied as stated above with respect to the claims described in §§ 2.b; 2.e; 3; 4.d(2); 4.d(3).

Dated this 26 day of May, 2022.

_____
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

_____