## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## WESTERN DIVISION

| | |
|---|---|
| ROSEBUD SIOUX TRIBE and their members; OGLALA SIOUX TRIBE and their members; LAKOTA PEOPLE'S LAW PROJECT; KIMBERLY DILLON; and HOKSILA WHITE MOUNTAIN,<br><br>     Plaintiffs,<br><br>v.<br><br>STEVE BARNETT, in his official capacity as Secretary of State for the State of South Dakota and Chairperson of the South Dakota State Board of Elections; LAURIE GILL, in her official capacity as Cabinet Secretary for the South Dakota Department of Social Services; MARCIA HULTMAN, in her official capacity as Cabinet Secretary for the South Dakota Department of Labor and Regulation; and CRAIG PRICE, in his official capacity as Cabinet Secretary for the South Dakota Department of Public Safety,<br><br>     Defendants. | Civ. No. 5:20-cv-05058-LLP |

## SETTLEMENT AGREEMENT AND STIPULATED ORDER OF DISMISSAL

WHEREAS, through the above-captioned lawsuit (the "Action") filed on September 16, 2020, Rosebud Sioux Tribe and their members, Lakota People's Law Project, Kimberly Dillon, and Hoksila White Mountain ("Plaintiffs"), alleged that Steve Barnett, in his official capacity as the South Dakota Secretary of State ("SOS"), Laurie Gill, in her official capacity as the Cabinet Secretary of the South Dakota Department of Social Services ("DSS"), Marcia Hultman, in her official capacity as the Cabinet Secretary for the South Dakota Department of Labor and Regulation ("DLR"), and Craig Price, in his official capacity as the Cabinet Secretary for the South Dakota Department of Public Safety ("DPS") (collectively, "Defendants"), violated Sections 5 and 7 of the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20504, 20506; and

WHEREAS, Plaintiffs' Amended Complaint, filed on August 10, 2021, requested that the Court issue a declaratory judgment that Defendants violated the NVRA, order injunctive and equitable relief necessary to remedy Defendants' past alleged violations of the NVRA and to

ensure Defendants' future compliance with the NVRA, and to award Plaintiffs their reasonable attorney fees, including litigation expenses, and costs pursuant to 52 U.S.C. § 20510(c); and

WHEREAS, on May 17, 2022, the Court denied Defendants' Motion to Dismiss; and

WHEREAS, on May 26, 2022, the Court granted in part and denied in part Plaintiffs' Motion for Summary Judgment, finding violations of Sections 5 and 7 of NVRA in several respects, and reserved the remaining issues for trial; and

WHEREAS, Defendants deny any violation of the NVRA alleged in the Amended Complaint and deny any wrongdoing by any Defendant; and

WHEREAS, the allegations in the Amended Complaint involve allegations arising from activities or lack of policies and direction from the prior Secretaries of State; and

WHEREAS, the allegations in the Amended Complaint would indicate that prior Secretaries of State failed to take appropriate steps as the chief state election officials to ensure compliance with the NVRA; and

WHEREAS, the allegations in the Amended Complaint would indicate that prior Secretaries of State failed to adequately advise state agencies regarding the NVRA; and

WHEREAS, Plaintiffs and Defendants (collectively, the "Parties") wish to amicably settle the disputes between them to avoid further litigation and to avoid the further expense, delays, risks, and uncertainties of trial and any appeals; and

WHEREAS, the Parties intend for this Agreement to wholly resolve this Action; and

WHEREAS, the Parties agree that upon the Court's approval and entry of this Agreement, Plaintiffs' claims in this Action shall be dismissed with prejudice,

NOW, THEREFORE, in consideration of the mutual promises, covenants, representations, and other consideration contained in this Agreement, the Parties hereby stipulate and agree as follows:

## I.   DEFINITIONS

For purposes of this Agreement only:

1.     "Action" refers to *Rosebud Sioux Tribe et al. v. Barnett et al.*, Civ. No. 5:20-cv-05058-LLP (D.S.D.).

2.     "Agency" refers to the South Dakota Department of Public Safety ("DPS"), South Dakota Department of Social Services ("DSS"), and the South Dakota Department of Labor and Regulation ("DLR"). "Agencies" refers collectively to DPS, DSS, and DLR.

3.     "Agreement" refers to this Settlement Agreement and Stipulated Order of Dismissal.

4.    "And" and "or" shall each mean "and/or."

5.    "Applicant" refers to any individual who engages in a Covered Transaction.

6.    "Covered Employee" refers to any employee of SOS or an Agency, or any employee of another agency or office that conducts Covered Transactions pursuant to a contract or agreement with an Agency, whose job responsibilities include assisting in any way with voter registration, Covered Transactions, or NVRA compliance, or who may in the course of their job responsibilities interact with individuals seeking to engage in Covered Transactions or register to vote.

7.    "Covered Transaction" refers to those transactions specified in the NVRA, 52 U.S.C. § 20506(a)(6)(A), including applications, renewals, and change of address requests for Driver's Licenses and non-driver identification cards, 52 U.S.C. §§ 20504(a) & (d), and applications, renewals, recertifications, and change of address requests for public assistance, 52 U.S.C. § 20506(a)(6)(1), whether conducted in-person or remotely, and whether conducted at an Agency or another site pursuant to a contract or agreement with an Agency.

8.    "Defendant" refers to each Defendant currently named in the Action and the Defendant's employees, agents, and successors. "Defendants" collectively refers to all Defendants named in this Action.

9.    "DLR" refers to the South Dakota Department of Labor and Regulation.

10.   "DPS" refers to the South Dakota Department of Public Safety.

11.   "DSS" refers to the South Dakota Department of Social Services.

12.   "Driver's License" means any personal identification document issued by a State motor vehicle authority, including driver's licenses and non-driver identification cards.

13.   "Driver's License Application" refers to the DPS form used for applications, renewals, and change of address requests for Driver's Licenses and non-driver identification cards, currently entitled, "South Dakota Driver License / I.D. Card Application."

14.   "Driver's License Office" refers to any office where an individual may apply for, renew, or change their address on a Driver's License or non-driver identification card, including all DPS permanent offices, DPS Travel Offices, and Issue Sites.

15.   "Effective Date" refers to the date this Agreement is approved and the stipulated order of dismissal is entered by the Court.

16.   "Issue Site" refers to any non-DPS office that accepts applications (including renewals and change of address requests) for driver's licenses and non-driver identification cards pursuant to a contract or agreement with DPS.

17.   "NVRA" means the National Voter Registration Act of 1993, 52 U.S.C. §§ 20501-20511.

18.     "Public Assistance" refers to the following public assistance programs administered by DSS or another agency under contract with DSS: Temporary Assistance for Needy Families ("TANF"), Supplemental Nutrition Assistance Program ("SNAP"), Children's Health Insurance Program ("CHIP"), Child Care Service Assistance Program, South Dakota Medicaid, and Low Income Energy Assistance Program ("LIEAP").

19.     "Remote Transaction" shall mean any Covered Transaction that is conducted other than in-person at an Agency, including, but not limited to, through the internet, telephone, mail, fax, or any other remote means or process through which an individual interacts with an Agency.

20.     "Section 5" means Section 5 of the NVRA, 52 U.S.C. § 20504.

21.     "Section 7" means Section 7 of the NVRA, 52 U.S.C. § 20506.

22.     "SOS" collectively refers to the South Dakota Secretary of State and the Office of the South Dakota Secretary of State.

23.     "State" means the State of South Dakota.

24.     "Travel Office" refers to any DPS office or driver's license exam station that offers driver's licensing services on an occasional, part-time, or temporary basis at various locations throughout the State.

25.     "Voter Preference Form" refers to the form required by Section 7 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20506(B).

26.     "Voter Preference Question" refers to the question, "If you are not registered to vote where you live now, would you like to apply to register to vote here today?," required by Section 7, 52 U.S.C. § 20506(a)(6)(B)(i).

27.     "Voter Registration Application" refers to any application, form, or card, or any portion thereof, in which a person can register to vote or update their voter registration.

28.     "Voter Registration Information" refers to any information submitted by an Applicant to an Agency to register to vote or update the Applicant's voter registration, including but not limited to their voter registration address.

## II.     COORDINATION OF NVRA COMPLIANCE BY THE SECRETARY OF STATE

The Secretary of State's Office ("SOS") will implement and maintain the following procedures and practices:

### A.     Statewide NVRA Coordinator

1.     The Secretary of State will continue to designate a statewide NVRA coordinator ("Statewide NVRA Coordinator") responsible for ensuring, monitoring, and overseeing

compliance with Sections 5 and 7 of the NVRA and this Agreement by SOS, the Agencies, and all county election officials.

2. The Statewide NVRA Coordinator's responsibilities shall include:

a. providing support and guidance (including technical expertise) to all Agencies to assist them in identifying what is required to implement and comply with Sections 5 and 7 of the NVRA, the State's implementing statutes and regulations, and this Agreement;

b. serving as SOS's primary liaison with the Agencies (including each Agency's designated NVRA coordinators and local office contacts) regarding NVRA compliance at each Agency (including all state-level, regional, and local offices where Covered Transactions occur) and county election officials;

c. coordinating and monitoring each Agency's NVRA compliance by:

    i. establishing and enforcing a schedule for Agency reporting on voter registration and NVRA compliance as required by this Agreement;

    ii. reviewing each Agency's reports as required by this Agreement within 15 business days of receipt;

    iii. at least once every six months, reviewing voter registration data and other information reported by the Agencies to identify potential voter registration issues at specific Agencies or offices where Covered Transactions occur;

    iv. consulting regularly with the Agencies' NVRA Coordinators regarding NVRA compliance by those agencies and any offices where Covered Transactions occur, which shall include, at minimum, reviewing each Agency's voter registration data, discussing known or suspected issues arising from that data or other sources, and discussing the status of any corrective action plans in place with the Agency;

    v. establishing complaint procedures by which any member of the public can notify the SOS of known or suspected NVRA compliance issues at an Agency or any office where Covered Transactions occur;

    vi. coordinating and overseeing a prompt inquiry by SOS of any known or suspected issues of NVRA compliance by an Agency or any office where Covered Transactions occur, which shall include, at minimum, notifying the Agency's NVRA Coordinator of the nature of the known or suspected issue, coordinating with the Agency's NVRA Coordinator to promptly contact the relevant office, Covered Employee(s), and affected South Dakota residents (if any), to determine the nature and extent of any noncompliance issue (including whether the issue is ongoing or affects multiple residents);

vii.   establishing written corrective action plans to address and correct NVRA noncompliance or voter registration issues at an Agency and any Agency state, regional, or local office where Covered Transactions occur, and overseeing, monitoring, and coordinating the implementation of such plans; and

viii.   developing a procedure for regular monitoring by SOS of the Agencies' compliance with the NVRA and this Agreement.

3.   The Statewide NVRA Coordinator must be prepared to respond promptly to specific inquiries from Agencies and county auditors regarding the requirements of the NVRA and compliance with the NVRA.

4.   If the Statewide NVRA Coordinator position becomes vacant, the Secretary of State shall appoint a person to fill the position no later than 15 days after the vacancy occurs, which may be an acting position until a permanent coordinator is designated.

5.   Within 30 days following the Effective Date, the Statewide NVRA Coordinator will attend a training on the NVRA conducted by The Elections Center within the National Association of Election Officials.[1] This training shall, at minimum, review the text of Sections 5 and 7, and cover the following topics:

a.   The requirements of Section 5, including the use of driver's license applications (including any renewal applications) for voter registration purposes under 52 U.S.C. § 20504(a)(1)-(2); the procedural requirements in 52 U.S.C. § 20504(c), including the use of attestations of eligibility for individuals without a current driver's license, state-issued ID, or Social Security number; and the change of address requirements in 52 U.S.C. § 20504(c)-(d);

b.   The requirements of Section 7, including voter registration agencies' obligations to present the Voter Preference Question during all Covered Transactions, as specified in 52 U.S.C. § 20506(a)(6)(A)-(B); distribute Voter Registration Application forms to all individuals except those who decline in writing to register to vote, as required by 52 U.S.C. § 20506(a)(6)(A); assist Applicants in completing Voter Registration Application forms (unless the Applicant refuses such assistance), as required by 52 U.S.C. § 20506(C), and accepting and transmitting completed Voter Registration Forms for transmittal to county election officials, as required by 52 U.S.C. § 20506 (a)(4)(A), (d);

c.   SOS's role in coordinating the State's NVRA responsibilities under 52 U.S.C § 20509; and

---

[1] Any individual who assumes the role of Statewide NVRA Coordinator during the term of this Agreement shall attend this training within 60 days of assuming that role.

       d.  Best practices in implementing and enforcing the NVRA by state election officials, including with respect to employee trainings, policies and procedures, forms, and the collection and use of data to identify potential compliance issues.

6.     Following the initial training required by the previous paragraph, at least once annually during the term of this Agreement, the Statewide NVRA Coordinator will either attend a follow-up training covering the topics listed above or meet with an external consultant to discuss and develop strategies to address any NVRA implementation concerns and issues by the State or any of the Defendants.

7.     The name and contact information for the Statewide NVRA Coordinator shall be posted on the SOS website.

**B.**    **NVRA Trainings**

1.     SOS shall be responsible for coordinating, overseeing, and monitoring the development and updating of all trainings on NVRA requirements and related voter registration policies and practices for the leadership and employees of SOS, the Agencies, and county election officials.

       a.  Trainings shall cover the requirements of the NVRA, relevant State rules and regulations, and this Agreement, and shall also cover common voter registration and NVRA compliance problems experienced by the Agencies, their local offices, and State residents;

       b.  The trainings provided to all Covered Employees and county auditor offices must cover the State's obligations under both Section 5 and Section 7;

       c.  The trainings provided to all Covered Employees of DPS and other Driver's Licensing Offices must cover the Agency's obligations under Section 5;

       d.  The trainings provided to all Covered Employees of DSS and DLR must cover the Agencies' obligations under Section 7.

       e.  SOS may use a standard video, webinar, or scripted live training, or some combination of those methods (collectively, "training tools"), along with written materials or handouts (collectively, "written training materials") to present the comprehensive orientation and refresher trainings.

       f.  The training tools and written training materials may, where appropriate, contain specific modules on Section 5, Section 7, and Agency- or office-specific information to be provided only to relevant Covered Employees or county auditor office employees.

2.    The trainings required by this Agreement shall include:

    a.   a comprehensive orientation on NVRA requirements of at least 45 minutes in duration using the curriculum, training tools, and any written training materials developed pursuant to Paragraphs II.B.3. and. II.B.4., including time for questions from participants, to be provided to all existing Covered Employees after January 1, 2023, and no later than April 30, 2023, and thereafter to all new Covered Employees within 30 days of their start date; and

    b.   beginning in 2024, a refresher training on NVRA requirements to be conducted at least once annually of at least 25 minutes in duration, including time for questions from participants, for all employees who previously received the comprehensive NVRA orientation;

3.    No later than October 31, 2022, or 90 days after the Effective Date, whichever is later, SOS will develop a standard training curriculum (the "Curriculum") for the comprehensive NVRA orientation and refresher trainings required by Paragraph II.B.2.a.-b. above, including any Agency-specific modules. SOS will post the curriculum and related materials on its website and notify Plaintiffs when that has occurred. The Curriculum shall include, at minimum:

    a.   the script of any standard training video, webinar, or live training used to present the comprehensive orientation and refresher trainings (including any Agency-specific modules);

    b.   the content of all written training materials, including presentation slides and handouts; and

    c.   the schedule for when the comprehensive orientation will be provided to existing Covered Employees within the timeframes specified above.

4.    For the initial Curriculum developed pursuant to this Agreement:

    a.   Plaintiffs will have 10 business days after receiving notice from Defendants that the training curriculum has been posted on the SOS website to notify the Statewide NVRA Coordinator in writing that Plaintiffs believe one or more provisions of the Curriculum are not in compliance with the NVRA or this Agreement, specifying the relevant provision(s) and specifically describing how the Curriculum violates the NVRA or this Agreement;

    b.   The Statewide NVRA Coordinator will have 10 business days following receipt of Plaintiffs' notice to respond to the notice and advise Plaintiffs whether Defendants dispute the issue or alleged violation and, regardless of whether the violation is disputed, whether and how Defendants will cure the alleged issue or violation; and

8

     c.  In the event of a dispute over whether the Curriculum provision(s) at issue are noncompliant with the NVRA or this Agreement, the Parties agree to make a good-faith effort to resolve such dispute within 30 days of the Statewide NVRA Coordinator's receipt of Plaintiffs' notice, in accordance with the dispute resolution procedures contained in Section VI.B. If the Parties are unable to resolve their dispute within that period, Plaintiffs may seek this Court's enforcement of this Agreement pursuant to Paragraph VI.B.2.c.

     d.  The deadline for Plaintiffs to provide notice under Paragraph II.B.4.a., and the period during which the parties may meet and confer to resolve any dispute or concern raised by Plaintiffs may be extended or modified by mutual, written agreement of the Parties.

5.    For subsequent updates to the Curriculum made during the term of this Agreement:

     a.  The Statewide NVRA Coordinator will notify Plaintiffs when updates have been posted on the SOS website; and

     b.  The dispute resolution and enforcement procedures contained in Section VI.B., and related deadlines and timeframes, will apply.

6.    SOS will administer the comprehensive NVRA orientation at the next biennial convening of county election officials following the adoption of that orientation no later than October 31, 2023. SOS will provide the comprehensive NVRA training at each biennial convening of county election officials thereafter. All training sessions shall include a question-and-answer period.

7.    The training tools, training script, and any written presentation materials adopted in accordance with this Agreement will be continuously available online on the Secretary of State's website and each Agency's website so that any Covered Employee, county election official, or member of the public may review the materials at any time. Any Agency-specific materials, training tools, scripts, and written materials will also be continuously available online on the relevant Agency or Agencies' website(s).

8.    SOS will maintain records of all Covered Employees' history of completing the required training, including the Agency records provided by DPS and DSS pursuant to Paragraphs III.G.1.-2. and IV.B.12. SOS will make these training records available for review and inspection to Plaintiffs upon request. Plaintiffs agree that these training records will not be released to the public and, if used during any enforcement action, will be redacted and/or filed under seal pursuant to a protective order.

9.    SOS will review and, if needed, update the training curriculum, video, and materials at least once annually beginning in 2024.

10.     Prior to the implementation of the comprehensive orientation required by Paragraph II.B.2.a., existing NVRA trainings provided by SOS or DSS to Covered Employees and county election officials shall be updated to reflect and be consistent with the requirements of this Agreement. Specifically:

    a.   The DPS training will be updated to:

        i.   Identify Section 5 of the NVRA and provide its text and/or a summary of Section 5's requirements;

        ii.   Identify the changes to the Driver's License Application form referenced in Paragraph II.C.2. of this Agreement;

        iii.   Update the "Required Information" slide to reflect DPS's new policy of and procedures for providing voter registration services to individuals who lack an existing Driver's License, State-issued nondriver identification number, or Social Security number, as described in Section III.E. of this Agreement;

        iv.   Describe the updated policies and procedures for change of address requests as referenced in Paragraphs III.D.2.-3. of this Agreement;

        v.   Describe the obligations of DPS Travel Offices and Issue Sites to comply with Section 5;

        vi.   Ensure that all references to DPS policies and procedures otherwise conform to changes described in this Agreement; and

        vii.   Identify the names, roles of, and contact information for the Statewide NVRA Coordinator and DPS NVRA Coordinator.

    b.   The DSS training will be updated to:

        i.   Reflect DSS's obligation under Paragraph IV.B.10 of this Agreement to log the date and manner in which a completed Voter Registration Application was transmitted to the appropriate county election official;

        ii.   Replace references to the "declination form" with "Voter Preference Form" and "voter registration question" to "Voter Preference Question";

        iii.   Update the "Customer Contact" slide to indicate that Voter Registration Forms will be provided to Applicants during in-person transactions;

        iv.   Describe the procedural requirements for change of address requests made during both in-person and Remote Transactions set forth in Paragraphs IV.B.4.a.-b. of this Agreement;

      v.  Describe DSS Covered Employees' obligations under Section 7 to provide the assistance to Applicants in completing Voter Registration Applications required by 52 U.S.C. § 20506(a)(6)(C);

     vi.  Ensure that all references to DSS policies and procedures otherwise conform to changes described in this Agreement; and

    vii.  Identify the names, roles of, and contact information for the Statewide NVRA Coordinator and DSS NVRA Coordinator.

  c.  SOS will use the updated training developed pursuant to this Agreement at the next biennial convening of county election officials in 2023.

## C.   Voter Preference and Voter Registration Forms

1.   To enable SOS to track and monitor compliance with the NVRA, SOS will, within 60 days of the Effective Date, adopt distinct agency codes to track Voter Preference Forms/Voter Preference Questions and Voter Registration Applications completed at (1) DSS/DLR, and (2) the South Dakota Department of Health (DOH).

2.   SOS will update all Voter Registration Application forms and Voter Preference Forms with the new codes within 30 days after the Effective Date, distribute those forms no later than 30 days thereafter, and instruct all Agencies to stop using earlier versions of the forms.

3.   The purpose and use of agency codes on Voter Registration Application forms and Voter Preference Forms will be covered in all trainings required under this Agreement.

4.   SOS will adopt a uniform written policy for all Agencies, consistent with S.D. Codified Law 12-4-6.1, that the operative voter registration date on a Voter Registration Application submitted to an Agency within five days following any voter registration deadline is the date the individual signed and dated the application, not the date the agency mailed it, the postmark date of the transmission, or the date received by the county auditor.

5.   SOS will require that all Agencies date-stamp the receipt of a Voter Registration Application and adopt uniform written procedures for logging when a Voter Registration Application is transmitted to a county auditor office.

6.   SOS will include instructions in its NVRA trainings and manuals on the right of individuals without a USPS address to provide a description of their physical address on Voter Registration Application forms.

7.   SOS will update the language on the Voter Registration Application informing an Applicant that they may provide a written description of their physical address if they do not have a USPS address, as follows:

11

Note:

If you live in a rural area and do not have a street address; if your residence address is a PO Box, rural box, or general delivery; or if you have no address, please describe the physical location of your residence in writing in the space below, which may include writing the names of the streets or intersections nearest to where you live and listing any landmarks (e.g., schools, churches, stores) near where you live.

**D.**     **SOS's Section 5 Monitoring and Enforcement Requirements**

1.     For every instance in which SOS has been notified of an NVRA compliance issue at a Driver's License Office in the last five years, including but not limited to offices inputting inaccurate or outdated addresses or other Voter Registration Information into the Driver's License Voter Registration ("DLVR") system; transmitting Voter Registration Applications to the wrong county auditor's office; failing to ensure that the date entered into DLVR system for a Voter Registration Application is the date the Applicant signed the application; failing to submit Voter Registration Applications to county auditor offices within mandated timeframes; or other issues resulting in an individual not being registered to vote or experiencing a delay in registering to vote, SOS shall, within 90 days of the Effective Date, develop and implement a plan for assessing whether those issues have been fully resolved and, if not, whether further monitoring or corrective action is necessary. If further monitoring or corrective action is necessary, SOS will coordinate the implementation and monitoring of such monitoring or corrective action.

2.     Consistent with 52 U.S.C. § 20504(d), SOS shall adopt a written policy that all changes of address processed at Driver's License Offices shall be transmitted to appropriate election officials for purposes of updating voter registration records unless an Applicant affirmatively opts out of changing their address for voter registration purposes.

3.     DPS implemented technical and programming changes to the DLVR system on June 3, 2022, to remove the feature that automatically populated the date that staff was entering the Voter Registration Information. The DLVR system currently requires staff to manually enter the date an Applicant signed the voter registration form. DPS notified all staff utilizing the DLVR system to enter application information, excluding Issue Site staff who do not directly enter application information into the DLVR system, of this change on June 3, 2022. DPS will continue to utilize this process.

12

**E.     SOS's Section 7 Monitoring and Enforcement Requirements**

1.      To coordinate NVRA compliance by DSS and DLR with Section 7 and this Agreement, SOS will:

   a.  coordinate with DSS leadership to ensure that DSS's NVRA coordinator is designated under the timeframes established in this Agreement;

   b.  provide technical assistance to DSS and DLR regarding the provision of Section 7-compliant voter registration services; adopt and distribute the agency-coded Voter Preference Forms and Voter Registration Applications for use by DSS and DLR as required by Paragraph II.C.1 of this Agreement; and respond to inquiries by DSS and DLR and their Covered Employees regarding NVRA requirements and compliance questions; and

   c.  provide the NVRA trainings required by this Agreement to all DSS and DLR Covered Employees.

2.      For every instance in which SOS has been notified of an NVRA compliance issue at DSS or DLR in the last five years, including but not limited to an office's failure to provide voter registration services during all Covered Transactions, failure to provide assistance to an Applicant in completing a Voter Registration Application, or failure to timely transmit Voter Registration Applications to appropriate election officials, SOS shall, within 90 days of the Effective Date, develop and implement a plan for assessing whether those issues have been fully resolved and, if not, whether further monitoring or corrective action is necessary. If further monitoring or corrective action is necessary, SOS will coordinate the implementation and monitoring of such monitoring or corrective action.

**F.     Data Collection, Analysis, and Reporting Requirements**

1.      Within 90 days of the Effective Date,[2] SOS will be responsible for preparing monthly reports containing, for each Agency:

   a.  The number of Covered Transactions completed at each Agency office (including driver's license offices operated by other entities under agreement with DPS);

   b.  The total number of responses to the Voter Preference Question received by the Agency (including forms with no response to the Voter Preference

---

[2] The Parties recognize that the Agencies' software programs will have to be updated to allow the data required for these reports to be captured. The Parties further recognize that these software updates cannot be accomplished by the Agencies and will be performed by the South Dakota Bureau of Information and Telecommunication (BIT). The Agencies have no authority to influence the schedule by which BIT completes these software updates. If BIT is unable to complete the updates within 90 days, Defendants will notify Plaintiffs of the same. The Parties agree that BIT's inability to complete the necessary software updates within the designated timeframes will not constitute a violation of this Agreement, provided that the updates are completed within a reasonable timeframe thereafter.

Question) and, of that number, the number of individuals who answered yes, no, or provided no answer to the question;

c. The number of Voter Registration Applications collected by the office; and

d. The number of Voter Registration Applications transmitted by the office to appropriate election officials.

2. SOS will post these monthly reports on its website so that they are available to Plaintiffs and the public.

3. At least once per quarter, the SOS Statewide NVRA Coordinator, in consultation with the Agencies' NVRA Coordinators, will review the monthly data and historical data, identify potential NVRA compliance issues using that data, and establish a plan for investigating, addressing, and resolving any actual or suspected compliance issues. The Statewide NVRA Coordinator will, in cooperation with the relevant Agency's NVRA Coordinator, monitor the Agency's implementation of any such plan.

## III.   SECTION 5 COMPLIANCE BY DPS

### A.   DPS NVRA Coordinator

1. DPS will continue to designate a DPS NVRA Coordinator to ensure Agency-wide compliance with Section 5 by DPS and all Driver's License Offices (whether operated by DPS or another entity under an agreement with DPS), to be DPS's primary point of contact for local Agency offices and Covered Employees regarding NVRA compliance and enforcement, and to be DPS's primary liaison with the Secretary of State's office on NVRA compliance and voter registration issues.

2. The DPS NVRA Coordinator's responsibilities shall include:

a. providing support and guidance (including technical expertise) to all of DPS's Covered Employees and local driver's license offices regarding compliance with Section 5 of the NVRA, the State's related election laws and regulations governing voter registration, and this Agreement;

b. providing guidance to DPS Covered Employees on NVRA requirements and related voter registration requirements, procedures, and materials;

c. monitoring DPS and each local driver's license office's NVRA compliance by:

i. reviewing voter registration data submitted by DPS to SOS on a monthly basis to ensure that voter registration data reported by DPS to SOS is accurate and being properly reported by local offices;

14

      ii.  reviewing voter registration data and other information produced by DPS to SOS, or provided by SOS to DPS, to identify potential voter registration issues at specific local driver's license offices;

      iii.  establishing complaint procedures by which any member of the public can notify DPS of known or suspected NVRA compliance issues by DPS or a local driver's license office;

      iv.  promptly transmitting any complaint of known or suspected NVRA compliance issues reported to, or learned of, by DPS to the Statewide NVRA Coordinator at SOS;

      v.  Coordinating with the Statewide NVRA Coordinator to promptly investigate any known or suspected NVRA compliance issues by DPS Covered Employees or local driver's license offices; and

      vi.  promptly reporting the outcome of all NVRA investigations, including whether a violation occurred and what, if any, corrective action was taken, to the Statewide NVRA Coordinator; and

  d.  cooperating with the Statewide NVRA Coordinator to implement, oversee, and monitor written corrective action plans to address and correct NVRA noncompliance by any DPS Covered Employee or by any Driver's License Office.

3.  If the DPS NVRA Coordinator position becomes vacant, the DPS Secretary shall designate a person to fill the position no later than 15 days after the vacancy occurs, which may be an acting position until a permanent coordinator is designated.

4.  The name and contact information for the DPS NVRA Coordinator shall be posted on the DPS website.

5.  No earlier than 45 days following SOS's adoption of the Curriculum required by Paragraph II.B.3., and no later than February 28, 2023, the existing DPS NVRA Coordinator will attend a training on the NVRA conducted by the Statewide NVRA Coordinator, with a follow-up training at least once annually thereafter during the term of this Agreement. Any individual newly designated as the DPS NVRA Coordinator shall receive the NVRA training conducted by the Statewide NVRA Coordinator within 30 days of assuming the role of DPS NVRA Coordinator, and at least once annually thereafter during the term of this Agreement.

**B.  General Obligations**

1.  DPS will ensure that all locations providing driver licensing services, whether a regular DPS office, Travel Office, or Issue Site, will be listed on the page on DPS's website listing DPS office locations (currently at

https://dps.sd.gov/contact/locations?agency=5), providing updated information on the days of the week (including specific days of the month for Travel Offices) and hours the offices are open.

2.    DPS will ensure that, upon receipt of all completed Driver's License Application forms (including renewal and change of address requests) and Voter Registration Applications, all Driver's License Offices (including Travel Offices and Issue Sites) will immediately date and time-stamp the form, and within ten business days, or within five business days if the form was accepted within five days before the last day for registration to vote in an election, following the day the form was received, input the forms into the State's TotalVote electronic portal or otherwise transmit the completed forms to the appropriate county election officials.

3.    DPS will be responsible for investigating known or suspected NVRA noncompliance at all DPS offices, including Travel Offices and Issue Sites, and for taking necessary action in consultation and cooperation with SOS to correct an office's violations and monitor the office's future compliance.

4.    DPS will post a DPS-produced poster in a prominent location in all Driver's License Offices (including travel offices and issue sites) informing clients of the availability of voter registration services in connection with Covered Transactions at those offices. The poster will provide information on how to contact the DPS NVRA Coordinator, which will include, at minimum, a general telephone number and email address where calls or messages will be directed to the current DPS NVRA Coordinator.

**C.    Driver's License Application Form**

1.    DPS will continue to use the Driver's License Application form, as amended pursuant to the following paragraph, for all applications, renewals, and change of address requests for Driver's Licenses and non-driver identification cards.

2.    DPS has amended the voter registration section of Driver's License Application form as shown in Figure 1, which, in relevant part:

    a.    Includes the statement: "Your information will be used to update your voter registration or register you to vote.", and

    b.    Contains a single checkbox followed by this language in bold text: "Do not use my information for voter registration purposes. (Your decision not to register to vote is confidential. If you register, the place where you register is confidential.)"

---

**VOTER REGISTRATION**

Your information will be used to update your voter registration or register you to vote.

☐ **Do not use my information for voter registration purposes. (Your decision not to register to vote is confidential. If you register, the place where you register is confidential.)**

Choice of party _____ If you are currently registered to vote in South Dakota and you leave Choice of party field blank you will remain registered with your current party affiliation. If you are not currently registered to vote in South Dakota and you leave the choice of party blank, you will be entered as an independent/no party affiliation voter, which is not a political party in South Dakota.

Last registration location:  City: _____ County: _____ State: _____

I declare, under penalty of perjury and $4,000 fine), that:
* I am a citizen of the United States of America;          * I have not been judged mentally incompetent;
* I actually live at and have no present intention of leaving   * I am not currently serving a sentence for a felony conviction; and
   the above address;                                    * I authorize cancellation of my previous registration.
* I will be 18 on or before the next election;

---

**FIGURE 1: VOTER REGISTRATION SECTION OF DRIVER'S LICENSE APPLICATION**

3.  On July 8, 2022, DPS posted the updated Driver's License Application form to the DPS website. All Driver's License Offices (including Travel Offices and Issue Sites), and all Covered Employees were directed to discontinue use of the prior version of the form and begin using the updated Driver's License Application form effective July 8, 2022.

**D.   Change of Address Procedures**

1.  DPS will continue to present the Voter Preference Question as part of the Driver's License Application to all Applicants who request to change their address on their Driver's License or non-driver identification card.

2.  DPS will transmit all change of address requests to the appropriate county auditor as a change of address for voter registration purposes, unless an Applicant expressly declines in writing to change their voter registration address by checking the box on the Driver's License Application indicating that the Applicant does not wish to update their voter registration address.

3.  DPS will not require any individual to affirmatively indicate that they wish to change their address for voter registration purposes.

**E.   Attestation of Voter Registration Eligibility**

1.  Driver's license applicants without a valid South Dakota driver's license, South Dakota nondriver identification number, or Social Security number will not be directed to a county auditor's office to register to vote. All Driver's License Offices (including Travel Offices and Issue Sites) will provide voter registration services to all such driver's license applicants during Covered Transactions.

2.  DPS will, no later than 30 calendar days after the Effective Date:

   a.  notify all DPS Covered Employees, in writing, that voter registration services will be provided to Applicants without a valid South Dakota Driver's License,

17

South Dakota nondriver identification number, or a Social Security number, and that individuals are not to be directed to county auditor offices and that all Driver's License Offices (including Travel Offices and Issue Sites) must provide voter registration services to all such Applicants during Covered Transactions;

b. distribute written instructions to all Driver's License Offices on how to register a voter without a valid South Dakota Driver's License, South Dakota nondriver identification number, or Social Security number using an affidavit in which an individual attests to their eligibility to register to vote pursuant to ARSD 5:02:02:21;

c. make attestation forms available at all Driver's License Offices (including Travel Offices and Issue Sites).

3. In cooperation with the Secretary of State, DPS will promptly update all policies, manuals, forms, and existing training materials (including the NVRA presentation currently provided to DPS examiners by SOS) that reference the former policy of directing individuals without a valid South Dakota Driver's License, South Dakota nondriver identification number, or Social Security number to a county auditor's office to register to vote.

**F.    DPS Travel Offices and Issue Sites**

1. DPS will ensure that Section 5-compliant voter registration services are provided at all Driver's License Offices, including all Travel Offices (including, but not limited to, Travel Offices serving Wagner, Armour, Winner, Rosebud, Pine Ridge, Hot Springs, Martin, and Sisseton) and all other offices serving tribal communities.

2. DPS will be responsible for updating its contracts or agreements to allow sufficient department oversight to ensure and enforce NVRA compliance by and within all Issue Sites, including ensuring that all Covered Employees at all Issue Sites receive the same training required under this Agreement as other DPS Covered Employees.

**G.    Training Records**

1. DPS will be responsible for tracking Covered Employees' attendance at the NVRA trainings required by this Agreement by maintaining a centralized record of:

a. each Covered Employee's name, title, work location, and start date (for employees hired after the Effective Date); and

b. the date(s) (if any) the Covered Employee attended the NVRA comprehensive orientation and refresher trainings required by this Agreement, and the form of training received (e.g., webinar, video, in-person).

2.    DPS will provide these training attendance records to the Statewide NVRA Coordinator at least once per quarter.

## IV.    SECTION 7 COMPLIANCE BY DSS AND DLR

### A.    DSS NVRA Coordinator

1.    DSS will continue to designate an Agency NVRA Coordinator to ensure Agency-wide compliance with Section 7 by DSS and its regional and local offices, as well as Section 7 compliance by DLR pursuant to Section IV.C. of this Agreement.

2.    The DSS NVRA Coordinator's responsibilities shall include:

    a.  providing support and guidance (including technical expertise) to all of DSS's Covered Employees, regional and local DSS offices, and DLR regarding compliance with Section 7, the State's related election laws and regulations governing voter registration, and this Agreement;

    b.  providing guidance to DSS and DLR Covered Employees on NVRA requirements and related voter registration requirements, procedures, and materials;

    c.  monitoring NVRA compliance by local DSS offices and DLR by:

        i.  reviewing voter registration data submitted by DSS and DLR to the Statewide NVRA Coordinator on a monthly basis to ensure that voter registration data reported to SOS by DSS and DLR is accurate and being properly reported by local DSS offices and DLR;

        ii.  reviewing voter registration data and other information produced by DSS and DLR to SOS, or provided by SOS to DSS or DLR, to identify potential voter registration issues at local DSS offices or DLR;

        iii.  establishing complaint procedures by which any member of the public can notify DSS and DLR of known or suspected NVRA compliance issues by local DSS offices and DLR;

        iv.  promptly transmitting any complaint of known or suspected NVRA compliance issues reported to, or learned of, by DSS or DLR to the Statewide NVRA Coordinator;

        v.  coordinating with the Statewide NVRA Coordinator to promptly investigate any known or suspected NVRA compliance issues by DSS or DLR Covered Employees or local offices; and

        vi.  promptly reporting the outcome of all NVRA investigations, including whether a violation occurred and what, if any, corrective action was taken, to the Statewide NVRA Coordinator; and

d.  cooperating with the Statewide NVRA Coordinator to implement, oversee, and monitor written corrective action plans to address and correct NVRA noncompliance by any DSS or DLR Covered Employee or local office.

3.  If the DSS NVRA Coordinator position becomes vacant, the DSS Secretary shall designate a person to fill the position no later than 15 days after the vacancy occurs, which may be an acting position until a permanent coordinator is designated.

4.  The name and contact information for the DSS NVRA Coordinator shall be posted on the DSS and DLR websites.

5.  No earlier than 45 days following SOS's adoption of the Curriculum required by Paragraph II.B.3., the existing DSS NVRA Coordinator will attend a training on the NVRA conducted by the Statewide NVRA Coordinator, with a follow-up training at least once annually thereafter during the term of this Agreement. Any individual newly designated as the DSS NVRA Coordinator shall receive the NVRA training conducted by the Statewide NVRA Coordinator within 30 days of assuming the role of DSS NVRA Coordinator, and at least once annually thereafter during the term of this Agreement.

**B.  DSS Obligations**

1.  DSS will ensure DSS and DLR's compliance with Section 7 and this Agreement by requiring DSS's local and regional offices and DLR offices where form DSS-EA-201 is available to clients to consistently distribute voter registration forms, assist Applicants in completing voter registration forms, and provide voter registration services for all Applicants who answer "yes" to the Voter Preference Question.

2.  DSS, in cooperation with SOS, will ensure that all DSS and DLR Covered Employees, and other DSS and DLR employees who may interact with a prospective Applicant, including clerical staff, be trained on NVRA compliance like any other Covered Employee.

3.  DSS Covered Employees will continue to offer voter registration services to individuals who leave the Voter Preference Question blank.

4.  DSS Covered Employees will provide a voter registration application to any Applicant who does not affirmatively decline to register to vote in response to the Voter Preference Question.

a.  For all in-person transactions, DSS will provide the Voter Registration Application during the transaction itself, rather than mailing it to the client following the transaction.

b. For changes of address conducted remotely:

    i. DSS will continue its system of nightly checks for any case where the address has been updated, causing production of a letter to the Applicant who submitted the change of address request notifying the Applicant that they may register to vote at DSS, enclosing a Voter Registration Application, and notifying the Applicant that they may seek assistance in completing the Voter Registration Application at a local DSS office;

    ii. for Applicants who change their address by telephone, the Covered Employee who speaks with the Applicant shall inform the Applicant that the Applicant will receive a Voter Registration Application by mail and may seek assistance in completing the Voter Registration Application at any local DSS office;

    iii. for changes of address requested by email, DSS will promptly email a confirmation notice to the Applicant notifying the Applicant that DSS will mail the Applicant a Voter Registration Application and that the Applicant may seek assistance in completing the Voter Registration Application at any local DSS office; and

    iv. for change of address requests submitted online, DSS will promptly notify the Applicant by email, text message, or other electronic means that DSS will mail the Applicant a Voter Registration Application and that the Applicant may seek assistance in completing the Voter Registration Application at any local DSS office.

5. DSS will continue to require its Covered Employees to provide voter registration services during all Covered Transactions, including applications for benefits, recertifications, renewals, and changes of address.

6. All application, renewal, and recertification forms for Covered Transactions used by DSS, except for federal forms that the Agency is legally restricted from amending, will contain the Voter Preference Question currently in use by DSS, which, in relevant part:

a. Includes a "Yes" and "No" checkbox followed by the statement: "If you are not registered to vote where you live now, would you like to apply to register to vote here today?",

b. Includes the following statements required by 52 U.S.C. § 20506(a)(6)(B):

    i. "Applying to register or declining to register to vote will not affect the amount of assistance that you will be provided by this agency."

ii.  "If you do not check either box, you will be considered to have decided NOT to register to vote at this time."

iii. "The decision to register and the location where you registered will remain confidential."; and

iv.  "If you would like help in filling out the voter registration application form, we will help you. The decision whether to seek or accept help is yours. You may fill out the application form in private."



**Would you like to Register to Vote?**

Applying to register or declining to register to vote will not affect the amount of assistance that you will be provided by this agency.

☐ Yes ☐ No   If you are not registered to vote where you live now, would you like to apply to register to vote here today?

If you do not check either box, you will be considered to have decided NOT to register to vote at this time. (Failure to check either box is deemed a declination to register for purposes of receiving assistance in registration but is not deemed a written declination to receive an application. If you do not check either box, you will be provided a voter registration form that you may complete at your convenience.)

If you register to vote, the information regarding the office to which the voter registration form was submitted will remain confidential and be used only for voter registration purposes. If you do not register to vote, this decision will remain confidential and be used only for voter registration purposes.  If you would like help filling out the voter registration form, we will help you. The decision whether to seek or accept help is yours. You may fill out the voter registration form in private.

If you believe that someone has interfered with your right to register or to decline to register to vote, your right to privacy in deciding whether to register or in applying to register to vote, or your right to choose your own political party or other political preference, you may file a complaint with the South Dakota Secretary of State, 500 E Capitol, Pierre SD 57501, (605) 773-3537.

FIGURE 2: VOTER PREFERENCE QUESTION FOR PUBLIC ASSISTANCE APPLICATIONS

7.  DSS will provide voter registration services in connection with administrative renewals for Medical Assistance and the six-month report process for SNAP and TANF beneficiaries.

8.  DSS will ensure that all of its benefits applications (including pre-application forms such as DSS-EA-201), manuals, and trainings include the Agency's NVRA-compliant voter registration policies and procedures, and to make any amendments to existing materials required by the NVRA or this Agreement.

9.  DSS will continue its current procedure of requiring all Covered Employees, including those at local DSS offices, to transmit all completed Voter Registration Applications to the appropriate county election officials no later than one business day after the office receives the completed Voter Registration Application(s).

10. DSS will ensure that all DSS and DLR Covered Employees record the date each Applicant's completed voter registration application was transmitted to a county auditor, the county auditor's office to which the application was sent, and the method of delivery (e.g., first-class mail, hand-delivery).

11.  DSS will post a DSS-produced poster in a prominent location in all local DSS and DLR offices informing clients of the availability of voter registration services in connection with Covered Transactions at those offices. The poster will provide information on how to contact the DSS NVRA Coordinator, which will include, at minimum, a general telephone number and email address where calls or messages will be directed to the current DSS NVRA Coordinator.

12.  DSS will be responsible for tracking DSS and DLR Covered Employees' attendance at the NVRA trainings required by this Agreement.

   a.  DSS will maintain a centralized record of:

      i.  each Covered Employee's name, title, work location, and start date (for employees hired after the Effective Date); and

      ii.  the date(s) (if any) the Covered Employee attended the NVRA comprehensive orientation and refresher trainings required by this Agreement, and the form of training received (e.g., webinar, video, in-person).

   b.  DSS will provide these training attendance records to the Statewide NVRA Coordinator at least once per quarter.

**C.  DLR Obligations**

1.  An Applicant's completion of a pre-application for TANF benefits at a DLR office, including form DSS-EA-201, will be considered a Covered Transaction under this Agreement.

2.  All DLR employees who handle TANF pre-applications, including form DSS-EA-201, or who interact with Applicants who complete such forms at DLR offices, will be considered Covered Employees under this Agreement.

3.  During all Covered Transactions at DLR offices, DLR's Covered Employees will provide Section 7-mandated voter registration services for all Applicants who answer "yes" to the Voter Preference Question or provide no answer to the Voter Preference Question, and will provide the same assistance to each Applicant in completing voter registration forms as provided in completing a TANF pre-application, including form DSS-EA-201.

4.  DLR Covered Employees will offer voter registration services to individuals who leave the Voter Preference Question blank on the Voter Preference Form provided with any TANF pre-application, including form DSS-EA-201.

5.  DLR will require all Covered Employees to transmit all completed Voter Registration Applications to the appropriate county election officials no later than one business day after the office receives the completed Voter Registration Application(s).

6.      DLR will comply with Paragraph IV.B.10 of this Agreement.

7.      DLR's compliance with Section 7 and this Agreement will be overseen and monitored by the DSS NVRA Coordinator and the Statewide NVRA Coordinator.

## V.      MONITORING AND REPORTING REQUIREMENTS

1.      For all publicly-available documents and written materials ("Written Materials") that Defendants are required to amend or create by this Agreement, including but not limited to existing training materials, new training scripts and materials, Voter Preference Forms, public assistance application forms, and manuals, the Parties agree that Defendants will post the new and updated Written Materials, including future updates made during the term of this Agreement, on the publicly available SOS website and each relevant Agency website(s). The SOS website and each Agency website will contain a single NVRA webpage with links to these materials, which may also be posted elsewhere on those websites. Defendants will notify Plaintiffs' counsel of the URL of the NVRA webpage for the SOS's website and each Agency's website. Defendants will provide a courtesy notification to Plaintiffs' counsel when those postings have been made with the URL of each posting. This notification requirement does not apply to regularly collected voter registration and training data routinely made available pursuant to this Agreement.

2.      Defendants will post the voter registration data reports required by Paragraph II.F. on the publicly available SOS website and relevant Agency website(s).

3.      For the written policies and procedures required to be developed by SOS under Paragraphs II.C.4, II.C.5, and II.D.2, SOS will publicly post the applicable policies pursuant to Paragraph V.1. of this Agreement.

4.      For the internal instructions and communications to Covered Employees required under Paragraph III.E.3, DPS will publicly post the applicable policies pursuant to Paragraph V.1. of this Agreement.

5.      For the written notifications regarding voter registration services provided by DSS to Applicants who change their address by telephone, email, or online, Defendants will make available on the SOS and DSS websites a copy of the template notice(s), indicating the method(s) of delivery applicable to each template.

6.      Upon compliance with Paragraph IV.B.7, DSS will promptly provide a written confirmation to Plaintiffs' counsel that the provision was implemented.

7.      In addition to the data and information posted online pursuant to Paragraph VI.1., Defendants agree to provide Plaintiffs additional information to assess Defendants' compliance with this Agreement upon reasonable request.

8.   For written notifications to Plaintiffs required by this Agreement, Defendants will provide that notice email to the following counsel during the term of this Agreement:

> **For Native American Rights Fund:**
> Samantha Kelty (kelty@narf.org)
>
> **For Demos:**
> Brenda Wright (bwright@demos.org)

If, during the term of this Agreement, either attorney named above is no longer the appropriate contact, Plaintiffs will notify Defendants' counsel, in writing, of the name and email address of the appropriate contact.

## VI.   TERM AND ENFORCEMENT

### A.   Term of Agreement and Jurisdiction to Enforce the Agreement

1.   This Agreement will remain in force and effect for a term of three (3) years from the Effective Date, as defined in Section I above.

2.   No later than five days after the execution of this Agreement by all Parties, the Parties will jointly file a motion Rule 41(a)(2) of the Federal Rules of Civil Procedure requesting that the Court approve and enter this Agreement and dismiss Plaintiffs' claims in this Action with prejudice. If the Court denies the Parties' joint motion, this Agreement will be rendered null and void.

3.   The Court shall retain jurisdiction in this Action for the three-year term of this Agreement solely to enforce this Agreement. This retention of jurisdiction for enforcement purposes will be stated in the Court's entry of judgment dismissing this Action following the Court's approval and entry of this Agreement.

### B.   Dispute Resolution and Enforcement Procedures

1.   During the three-year term of this Agreement, Plaintiffs will not file any action to enforce the Agreement, or any provision thereof, without first giving timely written notice to Defendants of Plaintiffs' good faith belief, following a reasonable inquiry, that one or more Defendants have violated the Agreement or the NVRA. Such notice constitutes a certification by counsel for Plaintiffs that the written notice is not being presented for any improper purpose; includes only claims and legal contentions warranted by existing law; and includes only allegations and factual contentions that have evidentiary support.

2.   Except as provided under Paragraph II.B.4, any written notice provided by Plaintiffs pursuant to the preceding paragraph for an alleged compliance issue or violation of this Agreement or the NVRA, shall describe with particularity the alleged issue(s) or violation(s) of the Agreement, as follows:

   a. A detailed statement of all relevant facts known to Plaintiffs, providing sufficient detail to identify the specific issue or violation, including the date(s) or approximate date(s) of the violation; the relevant Defendant(s), office(s) or location(s); the relevant Covered Employee(s) (if any); and other specific facts forming the basis for the alleged violation;

   b. The specific Defendant(s) alleged to be in violation of the Agreement or the NVRA;

   c. A reference to each provision of this Agreement as to which the alleged violation relates;

   d. A reference to the specific section of the NVRA as to which the alleged violation relates; and

   e. A detailed description of how the information contained in the required statement of facts violates the Agreement or the NVRA.

3. Upon Defendants' receipt of a timely written notice from Plaintiffs, Defendants will respond to Plaintiffs in writing within 10 business days of the notice to advise Plaintiffs whether Defendants dispute the alleged violation and, regardless of whether the violation is disputed, whether and how Defendants will cure the alleged violation.

4. In the event of a dispute over whether a violation of this Agreement has occurred, the Parties agree to make a good faith attempt to resolve the dispute within 45 days of such notice, or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office. The period during which the parties may meet and confer to resolve any dispute or concern raised by Plaintiffs may be extended or modified by mutual, written agreement of the Parties. To satisfy this requirement, the Parties agree to:

   a. Meet and confer as soon as practicable following Defendants' receipt of Plaintiffs' written notice to attempt to resolve the alleged violation or dispute amicably; and

   b. If the Parties are unable to resolve a dispute through the meet-and-confer process, the Parties may, upon mutual agreement, seek the assistance of a mutually agreed-upon mediator, to resolve the dispute.

5. If the Parties, with or without the assistance of a mutually agreed-upon mediator, are unable to reach a resolution within 45 days of Defendants' receipt of Plaintiffs' written notice, or within 20 days of Defendants' receipt of the notice if the potential violation occurred within 120 days before the date of an election for Federal office, or such longer period mutually agreed upon pursuant to Paragraph VI.3.c of this Agreement, Plaintiffs may initiate an enforcement proceeding before this Court with respect to the violation(s) set out in the written notice.

     a.  Any enforcement proceeding initiated by Plaintiffs shall be in the form of a motion to enforce the Agreement, supported by affidavits/declarations and relevant exhibits identifying the specific Defendants(s) alleged to be in violation of this Agreement and providing detailed facts setting forth the alleged violation, containing the information listed in Paragraph VI.B.2.

     b.  Only the Defendant(s) identified in the notice described in Paragraph VI.B.2.a. may be subject to an enforcement action.

     c.  Plaintiffs' motion and subsequent proceedings in any enforcement action will be governed by the Federal Rules of Civil Procedure and the Local Rules of the District of South Dakota, unless otherwise ordered by the Court or provided for herein.

     d.  The Parties agree that, during the pendency of a motion to enforce, the Court may, on the Court's own accord or at the Parties' request, refer the Parties to a magistrate judge for purposes of mediating the dispute.

     e.  The Parties agree that the prevailing party in any enforcement proceeding may petition the Court for reasonable attorneys' fees and costs, to the extent permitted by the fee-shifting provision of the NVRA, 52 U.S.C. § 20510(c), and applicable case law interpreting the fee-shifting provisions of the NVRA and other federal civil rights statutes.

6.    Plaintiffs agree not to seek attorney fees or costs incurred during the pre-enforcement notice and meet-and-confer processes set forth in this Agreement.

7.    No rights as to any claims or issues presented by Plaintiffs in the Action are reserved or left unresolved, and this Agreement will dispose of any and all claims that were brought by Plaintiffs in this Action.

8.    This Agreement is intended to settle disputed claims between the Parties. This Agreement, and/or any term thereof, shall not constitute nor be construed as a violation of the NVRA. This is a settlement of disputed claims and does not constitute an admission of liability or acknowledgment of wrongdoing by any of the Parties hereto.

9.    Nothing in this Agreement will bar Plaintiffs from initiating litigation for alleged NVRA violations that occur after this Action is dismissed pursuant to the notice and enforcement requirements contained in 52 U.S.C. § 20510.

## VIII.   ATTORNEYS' FEES AND COSTS

1.    Upon the Court's approval and entry of this Agreement, Defendant, the South Dakota Secretary of State office, consistent with *Libertarian Party of South Dakota, et al., vs. Shantel Krebs, et al.*, (Civ 15-411), by and through the State of South Dakota, agrees to pay Plaintiffs reasonable attorney fees,, including litigation expenses, and costs, in the amount of $625,000 (the "Fee and Cost Payment").

2.    Defendants will issue the Fee and Cost Payment to Plaintiffs' counsel no later than 60 days from the Effective Date by wire transfer or check. Payment should be issued to the Native American Rights Fund.

If the payment is issued via wire transfer, Plaintiffs' counsel will provide wire transfer instructions to Defendants' counsel.

If the payment is issued by check, it should be mailed to the following address:

> Native American Rights Fund
> ATTN: Michael Kennedy, Chief Financial Officer
> 1506 Broadway
> Boulder, CO 80302-6296

## IX.   MISCELLANEOUS PROVISIONS

1.    Rule 6 of the Federal Rules of Civil Procedure shall govern the computation of any time period specified in this Agreement unless expressly stated otherwise.

2.    The Parties warrant and represent that the persons executing this Agreement are duly authorized to do so.

3.    This Agreement will be construed in accordance with the laws of the State of South Dakota.

4.    This Agreement may be signed in counterparts. A faxed or PDF signature shall be treated as an original.

IN WITNESS WHEREOF, the Parties hereto, being duly authorized, have executed this Settlement Agreement and Stipulation of Dismissal.

**ACCEPTED AND AGREED TO BY:**

*FOR PLAINTIFFS ROSEBUD SIOUX TRIBE AND THEIR MEMBERS, OGLALA SIOUX TRIBE AND THEIR MEMBERS, LAKOTA PEOPLE'S LAW PROJECT, KIMBERLY DILLON, AND HOKSILA WHITE MOUNTAIN:*

Terry Pechota
PECHOTA LAW OFFICE
1617 Sheridan Lake Road
Rapid City, SD 57702
Telephone: (506) 341-4400
tpechota@1868treaty.com

Jacqueline DeLeon (pro hac vice)
Kim Gottschalk (pro hac vice)
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80302
(303) 447-8760
jdeleon@narf.org
jeronimo@narf.org

Samantha Kelty (pro hac vice)
NATIVE AMERICAN RIGHTS FUND
1514 P St., NW, Suite D
Washington, D.C. 20005
(202) 785-4166
kelty@narf.org

Brenda Wright (pro hac vice)
DEMOS
80 Broad Street, 4th Floor
New York, NY 10004
(212) 633-1405
bwright@demos.org

Joseph J. Wardenski (pro hac vice)
WARDENSKI P.C.
195 Plymouth Street, Suite 510
Brooklyn, NY 11201
(347) 913-3311
joe@wardenskilaw.com

*Counsel for Plaintiffs*

29

*FOR DEFENDANTS STEVE BARNETT, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE FOR THE STATE OF SOUTH DAKOTA AND CHAIRPERSON OF THE SOUTH DAKOTA STATE BOARD OF ELECTIONS; LAURIE GILL, IN HER OFFICIAL CAPACITY AS THE CABINET SECRETARY FOR THE SOUTH DAKOTA DEPARTMENT OF SOCIAL SERVICES; MARCIA HULTMAN, IN HER OFFICIAL CAPACITY AS CABINET SECRETARY FOR THE SOUTH DAKOTA DEPARTMENT OF LABOR AND REGULATION; AND CRAIG PRICE, IN HIS OFFICIAL CAPACITY AS CABINET SECRETARY FOR THE SOUTH DAKOTA DEPARTMENT OF PUBLIC SAFETY:*

Clifton Katz
Office of the Attorney General
1302 East Highway 14, Suite 1
Pierre, SD 57501
Telephone: (605) 773-3215
Clifton.Katz@state.sd.us

*Counsel for Defendants*

**SO ORDERED:**

Dated: SEPT. 12 2022

LAWRENCE L. PIERSOL
United States District Judge

30